## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS R. VALLIES,** individually and on behalf of all similarly situated vehicle buyers, ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | 2:01cv1438<br>Electronic Filing |
| **SKY BANK,** an Ohio bank, licensed to do business in the Commonwealth of Pennsylvania, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

AND NOW, this 22nd day of September, 2008, upon due consideration of defendant's motion for summary judgment (Doc. No. 108) and the parties' submissions in conjunction therewith, IT IS ORDERED that the motion be, and the same hereby is, granted.

Defendant's motion for summary judgment squarely raises the issue of whether a showing of detrimental reliance is a prerequisite to recovering actual damages under section 1640(a) of the Truth in Lending Act ("TILA") when the defendant has committed a disclosure violation. Specifically, in making the lending disclosures for financing the purchase of a new automobile defendant excluded the amount charged for accidental debt cancellation insurance from its calculation (and disclosure) of the "finance charge" without itself disclosing that the coverage and the amount charged for it were voluntary, as required by 15 U.S.C. § 1605(b). Plaintiff Vallies ultimately did receive all the required disclosure information to make the financial transaction accurate and complete, but did not receive all of it from the proper source: the lender/creditor. Instead, the information needed to exclude the charge from Sky Bank's TILA disclosures was received by plaintiff Vallies in and through a form supplied by a third-party. That form reflected only a transaction between the dealership, plaintiff Vallies, and the insurance carrier. Plaintiff was never informed that Sky Bank was financing the debt cancellation coverage.

Class plaintiffs maintain that because defendant did not disclose all the information

required by TILA, its disclosures were incomplete, and thus were the equivalent of an understatement. In such circumstances they maintain that TILA's actual damage provision should be construed to permit the recovery of the amount omitted from the calculation of the finance charge in violation of TILA, notwithstanding that the needed information ultimately was disclosed to and received by the plaintiff. Plaintiffs argue that such a construction is consistent with the intent of Congress as reflected in the statutory text and necessary in order to effectuate its intent to permit actual damages in the context of class actions.

Defendant maintains that virtually all courts to have squarely confronted the issue have held that detrimental reliance is an essential element of an actual damages recovery under TILA's remedial scheme. It asserts that the statutory text and the history of TILA's remedial scheme evidence Congress' intent to permit the recovery of such damages only where they have been caused by the violation in question. In other words, to recover actual damages a plaintiff must show he or she suffered an actual financial loss as a result of the TILA violation and doing so necessarily entails proof that but for the violation the plaintiff would have obtained a better or more advantageous financial arrangement. We agree and hold that the recovery of "actual damages" under TILA requires proof that the consumer suffered a loss because he or she relied on an inaccurate or incomplete disclosure to his or her detriment.

Specifically at issue is whether class plaintiffs can collect the $395.00 fee for the Guaranteed Auto Protection they voluntarily agreed to purchase as part of financing the purchase of a new automobile. They seek this amount as actual damages for the TILA violation highlighted by the United States Court of Appeals for the Third Circuit in <u>Vallies v. Sky Bank</u>, 432 F.3d 493 (3d Cir. 2006). As previously noted, the $395.00 charge for that protection was disclosed by a third party on a separate form which did not identify Sky Bank as the creditor. In the disclosures supplied by Sky Bank that Vallies understood to be the TILA disclosures reflecting the calculation of the finance charge, Vallies was not informed that the amount of the excluded fees and the debt cancellation coverage was voluntary. <u>Id.</u> at 493-94. Disclosure of the voluntary nature of the insurance and the fee charged for it was required in order for Sky Bank to exclude the amount from its calculation of the "finance charge." <u>See</u> 15 U.S.C. § 1605(b).

Vallies did receive this information through other forms supplied by the insurance carrier providing the debt cancellation coverage. Id. at 494. This court had ruled that because Vallies had received all of the information as part of the total financial transaction, the "fact that disclosures were made on a DNA [third-party] form, rather than on Sky Bank letterhead" was inconsequential. This ruling was based on the rationale that Vallies did receive all of the disclosure information and the applicable regulation permits the disclosures to be made together with or separately from other required disclosures. Id. at 494-95.[1]

On appeal, Vallies framed his claim as being based solely on the means by which the required information had been disclosed and emphasized that he was not complaining of an ultimate failure to receive all of the information or even that he received the information through separate forms. Id. at 496 ("We note once more that Vallies' claim is not that he failed to receive any of the required information, or that the GAP waiver could not be disclosed separately. Instead, the basis of his claim, with which we agree, is that the TILA places a clear and affirmative duty on the actual creditor itself to disclose any and all required information pertaining to GAP coverage and that where the creditor fails to disclose this information, it has violated TILA regardless of the ultimate receipt of information."). In other words, he based his claim on the fact that the required information had been disclosed through two separate sources, one of which was not the lender.

> The Third Circuit specifically framed the issue on appeal as follows:
>
> More specifically, we address the question of whether a creditor violated the provisions of the TILA when it excluded certain debt cancellation fees from the calculation of the finance charge without disclosing the amount of the fees and that the debt cancellation coverage was voluntary, despite the fact that the disclosures were ultimately made by a non-creditor third party.

Id. at 493. It answered the question in the affirmative, holding "that under the relevant sections at issue, the TILA does not permit a creditor to delegate its disclosure responsibility but requires all pertinent disclosures to be made by a single creditor." Id. at 494.

---

[1]Sky Bank was not present when Vallies bought his new truck and completed all of the paperwork generated by the transaction. The dealership employee who arranged the loan between Vallies and Sky Bank presented the paperwork on behalf of all entities involved.

On December 10, 2007, this court certified a class for the purpose of statutory damages and entered judgment in the amount of $501,000.00, consisting of $1,000.00 for Plaintiff Vallies and $500,000.00 for the class, subject to further proceedings. Plaintiff Vallies now seeks to recover actual damages pursuant to 15 U.S.C. 1640(a), which provides:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to ...
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> * * *

15 U.S.C. § 1640(a)(1). He contends that because the $395.00 was not properly excluded from Sky Bank's calculation and disclosure of the "finance charge," the finance charge Sky Bank actually did disclose was understated by $395.00. Thus, he is entitled to $395.00 in "actual damages" as a form of restitution.

Plaintiffs' position enjoys support in a few of the early cases to have considered the issue. See Ransom v. S & S Food Center, Inc. of Florida, 700 F.2d 670, 677 (11th Cir.1983); Lopez v. Orlor, 176 F.R.D. 35, 40 (D. Conn.1997); Sutliff v. County Sav. & Loan Co., 533 F. Supp. 1307, 1313 (N.D. Ohio 1982); In re Russell, 72 B. R. 855, 857 (Bankr. E.D. Pa.1987). These courts have permitted the recovery of the amount equal to the finance charge paid by the plaintiff in excess of the legally permissible finance charge without any showing of reliance.

For example, in Russell the court opined that "actual damages arise whenever a disclosure statement contains a substantial violation, as opposed to a mere technical violation, and that damages should be measured by the magnitude of the violation." In re Russell, 72 B. R. at 863. The court went on to hold that the amount of undisclosed finance charge constituted the measure of actual damage and relied on three separate areas of law to support its decision. First, it referenced the remedial nature of TILA and observed that the "analogous federal Securities Exchange Act and Anti-Trust Act disclosure-violation cases" were sufficiently analogous and have not been construed to require a showing of detrimental reliance in order to recover actual damages for nondisclosure. Id. at 863 (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375,

384-85 (1970); and Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562 (1931)). Second, the court drew on the self-correction provision incorporated into the 1980 amendments to § 1640(b) which permits a creditor to avoid liability if it timely learns of the error and corrects it before notice or suit from the borrower by "mak[ing] whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower." Id. (quoting 15 U.S.C. § 1640(b) as amended in 1980). Finally, the court observed that a number of courts have highlighted the "unrealistic and unnecessary" need for consumers to prove detrimental reliance. Id. (citing Ransom v. S & S Food Center of Florida, 700 F.2d 670, 677 (11th Cir.1983) (affirming, without analysis or comment, the trial court's allowance of "the additional finance charge paid by each class member which exceeded the legally permissible finance charge" as actual damages); Eovaldi v. First National Bank of Chicago, 71 F.R.D. 334, 336 (N.D. Ill.1976) (holding that "specific proof" of actual damages is unnecessary); and Goldman v. First National Bank of Chicago, 532 F.2d 10, 15 (7th Cir.1976) (suggesting that "actual damages" should be measured by the amount of undisclosed finance charges)).

In contrast, defendant's position enjoys the support of what can only be characterized at this juncture as the great weight of authority. See Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (*en banc*); Gold Country Lenders v. Smith, 289 F.3d 1155, 1157 (9th Cir. 2002); Perrone v. General Motors Acceptance Corp., 232 F.3d 433, 436-40 (5th Cir.2000); Stout v. J.D. Byrider, 228 F.3d 709, 718 (6th Cir.2000); Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir.2000); Cannon v. Cherry Hill Toyota, Inc., 161 F. Supp.2d 362, 369 (D. N.J. 2001); McCoy v. Salem Mortgage Co., 74 F. R. D. 8, 12 ( E.D. Mich. 1976); Brister v. All Star Chevrolet, 986 F. Supp. 1003, 1008 (E.D. La.1997); see also Bizier v. Globe Financial Servs., Inc., 654 F.2d 1, 4 (1st Cir.1981) (dicta). These courts have held that the plain meaning of the language used in § 1640(a)(1) indicates that Congress intended to limit the recovery of actual damages to losses caused by the defendant's noncompliance with TILA, and that intent properly is effectuated by requiring the traditional showing of detrimental reliance. They further

reason that any remaining doubt as to the propriety of this requirement is resolved by reviewing the pertinent legislative history and undertaking a more thorough analysis of the grounds upon which the minority view is based.

We are convinced that the issue remains an open one in this jurisdiction and the majority approach reflects the better reasoned and supported view. Accordingly, we adopt that approach and highlight some or the more persuasive reasoning for doing so in support thereof.

First, as consistently noted in the opinions reflecting the majority view, the requirement of detrimental reliance is mandated by the plain meaning of the language Congress chose to define actual damages. See e.g. Perrone, 232 F.3d at 436 ("According to its plain meaning, the statutory remedy of 'actual damages' in section 1640(a)(1) requires a direct causal relationship between the amount of damages and the injury or harm. That the 'actual damages' must be 'sustained by such person as a result of the failure' links the loss to the failure to disclose. 15 U.S.C. § 1640(a)(1). Actual damage is thus sustained as a result of a failure to disclose under the statute if a consumer can show that, had he been properly informed, he would have engaged in a different or less-expensive transaction."); Peters, 220 F.3d at 917 ("Actual damages are traditionally defined as 'an amount awarded to a complainant to compensate for a proven injury or loss.' Black's Law Dictionary 394 (7th ed.1999) (emphasis added). No circuit has examined what constitutes actual damages under § 1640, however, the reported district court cases have held the plaintiff must show a real loss or injury caused by the defendant. See e.g., Cirone-Shadow v. Union Nissan of Waukegan, 955 F. Supp. 938, 943 (N.D. Ill.1997); Barlow v. Evans, 992 F. Supp. 1299, 1309-10 (M.D. Ala.1997). This court will apply the traditional definition to the term actual damages as it is used in § 1640, and require that a plaintiff prove an injury or loss."); Turner, 242 F.3d at 1028 ("We now reconsider whether detrimental reliance is required for a TILA claim for actual damages. We note that the statute provides that a plaintiff is entitled only to 'any actual damages sustained ... as a result' of a TILA violation. 15 U.S.C. § 1640(a)(1). We find that this language indicates that the statute's authors intended that plaintiffs must demonstrate detrimental reliance in order to be entitled to actual damages under TILA."); In re Smith, 289 F.3d at 1157 ("We join with other circuits and hold that in order to receive actual

damages for a TILA violation, i.e., 'an amount awarded to a complainant to compensate for a proven injury or loss,' Black's Law Dictionary 394 (7th ed.1999) (emphasis added), a borrower must establish detrimental reliance."); Cannon, 161 F. Supp.2d at 369 ("The plain meaning of the 'sustained as a result' is that, in order to recover actual damages, the plaintiff must establish a causal relationship between the fraud and the loss."). Where the language used by Congress carries with it such a settled and well defined understanding, a court need not venture beyond it to ascertain what Congress had in mind.

Second, any remaining doubt as to the need for a plaintiff to establish detrimental reliance is removed by reference to the entire remedial scheme embodied in TILA and its pertinent legislative history. See e.g. Perrone, 232 F.3d at 436, 439 ("If the plain meaning alone does not clearly enough indicate that plaintiffs must show detrimental reliance upon a lessor's disclosure violation, the requirement becomes manifest when § 1640(a) is placed in its statutory context and contrasted with the statutory liquidated damages provision. ... While the actual damages provision requires a casual connection with the disclosure violation, 15 U.S.C. § 1640(a)(1), the statutory damages provision dispenses with causation and imposes a penalty solely for failure to comply with disclosure requirements. 15 U.S.C. § 1640(a)(2). Without a causation requirement, actual damages would overlay the statutory damages for no apparent reason. Conceptually, however, statutory and actual damages perform different functions: statutory damages are reserved for cases in which the damages caused by a violation are small or difficult to ascertain. Actual damages may be recovered where they are probably caused by the violation. In this way, the damage measures are complementary rather than duplicative."); Turner, 242 F.3d at 1027 ("The legislative history emphasizes that TILA provides for statutory remedies on proof of a simple TILA violation, and requires the more difficult showing of detrimental reliance to prevail on a claim for actual damages."); Cannon, 161 F. Supp.2d at 369 ("In addition to the plain meaning, the legislative history of the Act supports this reading: Section 130(a) of TILA allows a consumer to recover both actual and statutory damages in connection with TILA violations. Congress provided for statutory damages because actual damages in most cases would be nonexistent or extremely difficult to prove. To recover actual damages, consumers must show

that they relied on an inaccurate or incomplete disclosure.") (citing 141 Cong. Rec. H9513, H9516, 104th Cong., 1st Sess. (Sept. 27, 1995) (Stmt. of Mr. McCollum) (co-author of legislation)). Similarly , interjecting a form of restitution that would be applicable in virtually every case involving a misstatement of the finance charge or similar violation as actual damages would be inconsistent with a fundamental premise underlying Congress' decision to create a statutory damage remedy: the difficulty of proving actual damages. See Perrone, 232 F.3d at 436-37 ("On the other hand, actual damages have consistently been recognized as more difficult to prove.") (collecting cases).

Third, the remedial measures available for regulatory enforcement and creditor self-enforcement add support to rather than undermine the determination that detrimental reliance is needed to recover actual damages. As an initial matter, the availability of restitution through regulatory enforcement demonstrates that Congress clearly knew how to provide for that measure of damages when it though it appropriate. "If Congress had meant for restitution to be the measure of actual damages, it could have easily said so in the statute. It did not." Perrone, 232 F.3d at 439. In addition, TILA's "[a]dministrative, self-policing, and civil remedies serve distinct functions." Id. In this regard each form of enforcement operates within its own sphere and raises different policy considerations that lend support to the distinctions Congress chose to draw. Id. And "[w]hile the remedies may share the common goal of increased disclosure, there is no reason to suppose that they must share the same mechanism of enforcement." Id.

Fourth, plaintiffs' reliance on Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972) and other Rule 10b-5 cases involving the presumed influence of material securities fraud violations in the trading market is wide of the mark. TILA is not grounded in the protection against common law fraud. Id. (But, "[u]nlike 10b-5, the roots of Truth in Lending are not in protection against common law fraud, and while any Truth in Lending violation necessarily makes the task of shopping for credit more difficult, that does not translate into a 'material' violation.") (quoting McCoy v. Salem Mortgage Co., 74 F.R.D. 8, 13 (E.D. Mich.1976)). And there is no textual support in TILA's actual damage provision for drawing distinctions between "substantial" or "material" violations and other "technical" violations as the

approach in Ute and plaintiffs would have us do.  See Perrone, 232 F.3d at 438 (adopting such an approach would "call upon the court to differentiate between technical and substantial violations.  Such a test 'marks a radical departure from established Truth in Lending case law.'") (quoting D. Edwin Schmelzer, Truth in Lending Developments in 1987: An Active Year on Several Fronts, 43 Bus. Law. 1041, 1067-68 (May, 1988)).  Consequently, adopting the proposed approach would ignore the intent of Congress to require strict causation in awarding actual damages and substitute for it a remedial approach only found elsewhere in TILA's comprehensive scheme.

Finally, the notion that enforcing the strict causation standard Congress chose to govern actual damages runs counter to and is inconsistent with its recognition that actual damages are to be considered in assessing statutory damages in a class action setting is unavailing.  The fact that the court is directed to consider "the amount of any actual damages awarded" in determining statutory damages is not logically connected to determining the standard to be employed in awarding actual damages.  See Perrone, 232 F.3d at 439 n. 6 (noting the lack of a logical connection between the contention that Congress necessarily contemplated that actual damages would be available in a class action setting and "the separate question of what formula to apply for measuring actual damages.").   Furthermore, as noted in McCoy, a number of cases have addressed the flexibility afforded to the district courts under Rule 23 and the potential need for bifurcated procedures that might be utilized in the class action context to accommodate individual determinations.  See McCoy, 74 F.R.D. at 13 ("A number of cases, including Cutner v. Fried, 373 F.Supp. 4 (S.D.N.Y.1974); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), and Samuel v. University of Pittsburgh, 375 F.Supp. 1119 (W.D. Pa.1974) have recognized that separate proceedings may be necessary to determine individual damages in class actions."); see also Irving Trust Co. v. Nationwide Leisure Corp., 95 F.R.D. 51, 58 (D.C. N.Y. 1982) ("Except in an unusual case, the fact that damages present individual issues will not defeat certification.").  In addition, other approaches may be available to assist the parties and the court in handling such individual assessments without undermining the utility of a class action approach.  See Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974) (approving a test case approach in addressing individual damages within the context of a class action setting where principles of fairness

demand as much and observing that it is the plaintiff that has control over whether and when to ask for class certification). Thus, the fact that Congress contemplated situations where consideration of the recovery of actual damages would be pertinent in setting the amount of statutory damages in a TILA class action provides little support for plaintiff's position.

Plaintiffs' attempt to substitute a simple measure of restitution for a well-recognized and understood causation standard lacks both textual and persuasive analytical support. In contrast, defendant's insistence on the need for a showing of detrimental reliance enjoys the same. For these reasons, we join the great weight of authority holding that a showing of detrimental reliance is necessary to establish actual damages under § 1640(a).

In light of the above, plaintiffs must have sufficient evidence to meet the following elements in order to recover actual damages:

> a plaintiff must show that "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price."

Peters, 220 F.3d at 917; accord Rockey v. Courtesy Motors, Inc., 199 F.R.D. 578, 591 (W.D. Mich. 2001); Cannon, 161 F. Supp.2d at 369. Because plaintiff Vallies got all of the required information and voluntarily elected to incur the debt cancellation insurance when he purchased his vehicle, it is clear that he cannot satisfy the third or fourth element of this test. It follows that defendant's motion for summary judgment must be granted.

                                  s/ David Stewart Cercone
                                  David Stewart Cercone
                                  United States District Judge

cc:    Michael P. Malakoff, Esq.
        Malakoff & Brady, P.C.
        The Frick Building
        Suite 200
        437 Grant Street
        Pittsburgh, PA 15219

Richard E. Shenkan, Esquire
Virginia Shenkan, Esquire
P. O. Box 1130
New Castle, PA 16103

Alan S. Kaplinsky, Esquire
Carl G. Roberts, Esquire
Jeremy T. Rosenblum, Esquire
Martin C. Bryce, Jr., Esquire
Ballard Spahr Andrews & Ingersoll
1735 Market Street
51st Floor
Philadelphia, PA 19103