**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LOUIS R. VALLIES,** individually | ) | |
| and on behalf of all similarly situated | ) | |
| vehicle buyers, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **2:01cv1438** |
| | ) | **Electronic Filing** |
| **SKY BANK,** an Ohio bank, licensed | ) | |
| to do business in the Commonwealth | ) | |
| of Pennsylvania, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Presently before the court is the plaintiff class' petition seeking an award of $700,376.82

for attorney fees and costs that were incurred during the seven years of litigation that led to the

parties entering into an agreement to resolve the litigation on December 10, 2007.   For the reasons

set forth below, the petition will be granted in part and denied in part.   After making adjustments

to the specific hours claimed primarily to eliminate time spent on unsuccessful claims and issues,

the court will approve an award of $515,708.70 in attorney fees and costs of $7,777.47, for a total

award of $523,486.17.

The underlying facts giving rise to the successful portion of this protracted litigation were

summarized by the United States Court of Appeals for the Third Circuit in Vallies v. Sky Bank,

432 F.3d 493 (3d Cir. 2006):

> [Louis] Vallies obtained a loan from Sky Bank to purchase a truck from Phil Fitts
> Ford.   Fitts, a licensed motor vehicle dealer, arranged the loan between Sky Bank
> and Vallies.   It is undisputed that the loan entered into between Vallies and Sky
> Bank financed, in part, a $395.00 charge for Guaranteed Auto Protection ("GAP"),
> a form of debt cancellation coverage, that was not incorporated into Sky Bank's
> calculation of the total finance charge.   It is likewise undisputed that the agreement
> specifying the terms of the loan did not individually itemize the GAP premium but
> combined the premium with a fee for service contract itemized as "To National

> Auto."  On the same day as he signed the loan agreement with Sky Bank, Vallies
> signed a separate form entitled "GAP Waiver Agreement" that contained the
> correct cost of the GAP premium and the required [Truth In Lending Act]
> disclosures concerning the exclusion of the GAP premium from finance charges.
> This separate GAP Waiver form was not incorporated into Sky Bank's loan and
> Sky Bank was not a party to the GAP Waiver agreement.   Moreover, nothing
> contained in the agreement would suggest to Vallies that Fitts was acting on the
> bank's behalf in entering it. Instead, the agreement was signed only by Vallies and
> Fitts.

Id. at 494.   Pursuant to defendant's motions to dismiss, this court had ruled that because Vallies

had received all of the information as part of the total financial transaction, the "fact that

disclosures were made on a DNA [third-party] form, rather than on Sky Bank letterhead" was

inconsequential.   This ruling was based on the rationale that Vallies did receive all of the

disclosure information and the applicable regulation permits the disclosures to be made together

with or separately from other required disclosures.   Id. at 494-95.

On appeal, the Third Circuit considered whether Sky Bank violated the provisions of the

Truth In Leading Act ("TILA") when it excluded certain debt cancellation fees from the

calculation of the finance charge without disclosing the amount of the fees and that the debt

cancellation coverage was voluntary, despite the fact that those disclosures ultimately were made

by a non-creditor third party.   Id. at 493.   It held "that under the relevant sections at issue, the

TILA does not permit a creditor to delegate its disclosure responsibility but requires all pertinent

disclosures to be made by a single creditor."   Id. at 494.

The backdrop leading to the above ruling and the judgment in this court that eventually

followed is set forth below.

On August 1, 2001, Vallies commenced this lawsuit against Sky Bank by filing an eleven

count class-action complaint.   The original complaint set forth counts for violations of the TILA

(Counts I-IV); the Pennsylvania Banking Code of 1965, 7 P.S. §§ 301, et seq. (Counts V and VI);

the Motor Vehicle Sales Finance Act, 69 P.S. § 601, et seq. (Counts VII and IX); the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, et seq. (Count VIII); and the Pennsylvania Goods and Services Installment Sales Act, 73 P.S. §§ 1101, et seq. (Counts X and XI).

After filing the complaint, Vallies received multiple extensions to file an amended complaint.   The amended complaint was filed on November 14, 2001, and contained twelve counts.   It advanced the following claims: TILA violations (Counts I-IV); Banking Code violations (Counts V and VIII); Pennsylvania Goods and Services Installment Sales Act violations (Counts VI and VII); a Pennsylvania Fair Credit Extension Uniformity Act violation, 73 P.S. § 2270 et seq. (Count IX); a Pennsylvania Unfair Trade Practices and Consumer Protection Law violation (Count X); a violation of Pennsylvania' Maximum Charge Law, 42 P.S. § 502 (Count XI); and a breach of the contract between Vallies and defendant (Count XII).

Sky Bank responded by filing a partial motion to dismiss, which sought dismissal of Counts II, III and V-VIII.   Motion to Dismiss (Doc. No. 12).   On August 15, 2002, the motion was granted in part, and Counts III and V-VIII were dismissed.   Memorandum Order of August 15, 2002 (Doc. No. 23).

On August 30, 2002, Vallies filed a motion for reconsideration solely with respect to the dismissal of Count III.   Motion for Reconsideration (Doc. No. 25).   On September 5, 2002, he filed a motion for class certification.   Motion for Class Action Certification (Doc. No. 27).   This was followed by a motion for declaratory judgment and permanent injunction under Rule 65. Motion for Declaratory Judgment and Permanent Injunction (Doc. No. 29).   All of these motions were denied on October 28, 2002.   Memorandum Order of October 28, 2002 (Doc. No. 35).

On November 29, 2002, Vallies filed a motion to enter final judgment pursuant to Rule 54(b) with respect to Counts VI and VII.   Motion to Enter Final Judgment (Doc. No. 36).   This motion was withdrawn as part of a stipulation dated April 1, 2003.   Stipulation (Doc. No. 43).

3

As part of the stipulation Sky Bank moved for summary judgment on Counts I, II, IV and IX-XII of the amended complaint.   Motion for Summary Judgment (Doc. No. 44).   This motion was denied on July 30, 2003, without prejudice to renew at the completion of all relevant discovery. Order of July 29, 2003 (Doc. No. 46).

Vallies filed a stipulation of dismissal on December 16, 2003, which was approved on December 17, 2004.   Stipulation of Dismissal (Doc. No. 47) and Order of December 17, 2003. As a consequence, Counts I, II, IV and IX-XII were "voluntarily dismissed with prejudice."

Vallies appealed only the ruling on Count III.   On January 5, 2006, the United States Court of Appeals for the Third Circuit reversed the dismissal of Count III as noted above and remanded for further proceedings.   Vallies v. Sky Bank, 432 F.3d 493, 496 (3d Cir. 2006).

Following remand, a case management order was entered and Sky Bank filed an Answer on March 16, 2006.   Minute Entry of March 2, 2006 (Doc. No. 52) and Case Management Order of March 2, 2006 (Doc. No. 54).   Discovery followed and over the next year several discovery-related motions were filed.   See Docket Entries 56-69.

On November 20, 2006, Vallies filed a motion to compel the identification of the putative class members and the disclosure of their actual loan files.   Motion to Compel (Doc. No. 60).   On February 20, 2007, Sky Bank moved for summary judgment on Count III based on the contention that the individual representative for Fitts at the loan closing acted as Sky Bank's agent for the purpose of providing the requisite TILA disclosures.   Motion for Summary Judgment (Doc. No. 70).   Extensive submissions were filed in conjunction with both motions.   See Docket Entries 60, 62-64, 67-68, 70-78, 81-82, 92 and 95.   Defendant's motion for summary judgment was denied on August 29, 2007.   Memorandum Order of August 29, 2007 (Doc. No. 96).   Vallies' motion to compel was granted.   Order of August 30, 2007 (Doc. No. 97).

On October 1, 2007, defendant filed a motion to stay and submit the case to mediation,

4

which Vallies opposed.   The motion was denied on October 25, 2007.   Motion to Stay (Doc. No.

99); Brief in Opposition (Doc. No. 101); Order of October 25, 2007 (Doc. No. 105).

On November 21, 2007, the parties filed a joint motion for the creation of a statutory

damages class and the entry of judgment in the amount of $501,000, with $500,000 being awarded

to the class and $1,000 being awarded to Vallies.   This motion resolved the litigation with the

exception of the availability of actual damages under Count III.   On December 10, 2007, the

parties' joint motion was granted, with the creation of a class for the purpose of awarding statutory

damages only and the proposed resolution being deemed a fair, adequate and reasonable resolution

of the statutory damages claim at Count III.   Order of December 10, 2011 (Doc. No. 107).   A

final order of relief at Count III, notice and distribution to the class, the resolution of plaintiffs'

claim for attorney fees and costs and the completion of all outstanding discovery obligations were

postponed until the parties resolved the issue of actual damages.   Id.

On January 9, 2008, defendant moved for summary judgment on the issue of actual

damages on the ground that Vallies had failed to show detrimental reliance, a requirement for such

a recovery under 15 U.S.C. § 1640(a)(1).   The motion was granted on September 22, 2008.

Vallies appealed.    On December 31, 2009, the Third Circuit affirmed.   Vallies v. Sky Bank, 591

F.3d 152 (3d Cir. 2009).

The award obtained for the class was the maximum statutory recovery authorized under the

TILA, 15 U.S.C. § 1640.   Ultimately, each class member will receive $59.10.   Class counsel

represents and this court has no reason to doubt that the award is the only maximum statutory

recovery ever obtained under the TILA.   In addition, defendant paid the entire $61,521.00

expended in providing notice and distribution.   The Third Circuit's ruling also has a non-liquefied

economic value to auto-purchasing consumers, which plaintiffs' economics expert quantified at

$1,134,736.00 over a five year period when reduced to present day value.

As noted in defendant's response and opposition to the motion for award of attorney fees, the course of the litigation reflects four somewhat distinct periods of development.   Time Period A spans from the filing of the initial complaint until the court granted in-part defendant's partial motion to dismiss on August 15, 2002.   During this time all twelve counts/claims for recovery were at issue and the pleadings and motions were not specific to one individual count or particular group of counts.

Time Period B ran from August 15, 2002, until December 17, 2004, when Vallies voluntarily dismissed all claims that survived this court's rulings on defendant's motion to dismiss. During this period many of the motions pertained to the remaining claims in the amended complaint and more specifically, Counts VI and VII, as to which Vallies filed a motion to enter final judgment.

Time Period C ran from December 18, 2004, until January 5, 2006.   During this period Vallies appealed and the focus of the appeal was solely on establishing liability at Count III.

Finally, Time Period D spans from the date of remand on January 6, 2006, through December 10, 2007, the date the order was entered on the parties' joint motion for certification of a class as to statutory damages.   During this period the litigation was focused on class certification, discovery matters that involved both statutory and actual damages and defendant's motion for summary judgment based on an agency defense.

Defendant advances a number of objections to the petition in an effort to eliminate a substantial portion of the requested "lodestar" award.   These include an extensive attack based on the development of the claims and issues when contrasted with the relief obtained, the specificity of the attorneys' time and task entries in their hourly log, and the overall reasonableness of the requested fees.   Defendant asserts that plaintiffs' class counsel has provided grossly inadequate documentation and inaccurate or insufficient time entries and failed to account for the time spent

6

on the numerous unsuccessful claims.   In addition, class counsel recorded their time entries in quarter hour as opposed to six minute increments.   Accordingly, the ultimate award assertedly should be reduced significantly to account for plaintiffs' limited success and the asserted recordkeeping shortcomings.

Plaintiffs contend that time-saving and prudent litigation strategies that were conducive to prevailing on Count III were employed throughout the litigation and the attorneys' time and task recordkeeping entries were conservative and in accordance with industry practice.   The litigation has been frugally staffed by counsel and their undertakings consistently contributed to the success of the litigation as a whole.   Furthermore, sufficient reductions have been made to the claimed hours through the use of blanket and other reductions, which purportedly are more than adequate to account for any duplication by counsel, time spent that did not contribute to the success on Count III and so forth.   In light of these multiple measures, defendant's attack on class counsel's petition essentially seeks what should be recognized as "double-deductions."

Close and careful review of the record demonstrates that reductions beyond those already made by plaintiffs' class counsel are warranted for various reasons, but not to the degree sought by defendant.

The traditional "American Rule" provides that the parties are "ordinarily responsible for their own attorney's fees."  Truesdell v. Philadelphia Housing Auth., 290 F.3d 159, 163 (3d Cir. 2002).   Thus, there is a "general practice of not awarding fees to a prevailing party 'absent explicit statutory authority.'"  KeyTronic Corp. v. United States, 511 U.S. 809, 819 (1994) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 262 (1975)).   An exception to the American Rule is established in Section 1640(a)(3) of the TILA, which provides that "the cost of the action, together with a reasonable attorney's fee as determined by the court," may be awarded in the "case of any successful action to enforce the foregoing liability." 15 U.S.C. § 1640(a)(3).

In <u>Hensley v. Eckerhard</u>, 461 U.S. 424 (1983), the Court laid down the general standards governing the "reasonableness" of an award of attorney's fees pursuant to any statutory exception to the American Rule.   It explained: "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."   <u>Hensley</u>, 461 U.S. at 433.   This figure is commonly referred to as the "lodestar," or the guiding light in determining attorney fees.

The lodestar approach was pioneered by the United States Court of Appeals for the Third Circuit in <u>Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (1973), appeal after remand, 540 F.2d 102 (1976), and has "achieved dominance in the federal courts" after the Court's decision in <u>Hensley</u>.   <u>Perdue v. Kenny</u>, 130 S.Ct. 1662, 1672 (2010).   The burden of establishing the reasonableness of a fee request falls on the plaintiff's counsel.   <u>Hensley</u>, 461 U.S. at 437; <u>accord</u> <u>Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 178 (3d Cir. 2001) (the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and the hourly rates.").   "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." <u>Loughner</u>, 260 F.3d at 178 (quoting <u>Pennsylvania v. Delaware Valley Citizens' Council</u>, 478 U.S. 546, 564 (1986) (internal quotation omitted)).

In order to meet this burden the plaintiff's counsel must present documentation sufficient to justify the fees.   <u>Hensley</u>, 461 U.S. at 433.   To enable a meaningful review the fee petitioner must produce adequate billing records that detail how the time was spent in litigating the presented claims.   <u>Id.</u> at 437.   A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." <u>Lindy</u>

8

Bros., 487 F.2d at 167.   However, "it is not necessary to know the exact number of minutes spent, nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."   Id.; Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983) (same).

A fee petition is required to be specific enough to allow the district court "to determine if the hours claimed are reasonable for the work performed."   Pawlak, 713 F.2d at 978; Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir.1990).   Where a petitioner's documentation is inadequate a court "may reduce the award accordingly."   Hensley, 461 U.S. at 433.

When determining the number of compensable hours in the lodestar equation, it is particularly important to consider unsuccessful claims.   If an unsuccessful claim is unrelated to the successful claim, "the hours spend on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."   Hensley, 461 U.S. at 440.   This is "because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley, 461 U.S. at 434-35).

When a challenge is made to the expenditure of hours for unsuccessful claims, an in-depth and probing review is warranted.   Id.   A reduction is not appropriate merely "because some of a prevailing party's related claims are unsuccessful."   Id. (citing Hensley, 461 U.S. at 434-35).   To the contrary, where related claims involve "a common core of facts" or are based on "related legal theories, ... [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."   Id. (quoting Hensley, 461 U.S. at 435).   In such circumstances the work properly is attributed to the success of the plaintiff and is compensable.

In contrast, compensation generally is inappropriate for claims that did not depend on the same sets of facts and legal theories because such work did not contribute to the claims on which

the party prevailed.   Id.; accord Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 7 (1st Cir. 1993) (district court properly apportioned hours devoted to unsuccessful state-law claim for intentional infliction of emotional distress that had a distinct damage remedy and was tried to a jury where party prevailed on non-jury Title VII sexual harassment claim).   In other words, time devoted to unsuccessful claims properly is excluded from the lodestar where the claims "were, in fact, distinct."   McKenna, 582 F.3d at 457; accord Fox v. Vice, -- U.S. --, 131 S. Ct. 2205, 2214 (2011) ("[A] fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'   But the presence of [such] unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his [federal] rights.") (quoting Hensley, 461 U.S. at 435).

The party seeking fees has the burden to prove that the time spent on unsuccessful claims contributed to the success of the claims on which it prevailed.   Id. at 457-458.   Assessing relatedness on a claim-by-claim basis is a fact-intensive determination.   Id. at 458.   To facilitate this determination "[i]t is incumbent on the fee applicant . . . to 'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'"   Id. (quoting Hensley, 461 U.S. at 437).

A reduction based merely on the ratio of the successful and unsuccessful claims is inappropriate.   Id. ("[o]f course, a fee award should not be calculated using a simple mathematical approach based on the ratio between a plaintiff's successful and unsuccessful claims.") (quoting McKenna v. City of Philadelphia, 2008 U.S. Dist. LEXIS 76769, *41, 2008 WL 4450223 (E.D. Pa., September 30, 2008).   Instead, the court's discretion is to be guided by the reliable information available, including the time that actually was spent on the successful claim, the tasks undertaken, the recovery obtained and so forth.   Id.

The prevailing party's counsel failure to maintain records that will enable the reviewing court to calculate a proper award with precision does not preclude an award.   Instead, the reliable information is to be taken into account to make a reasonable estimate of the proper division of time.   See id. (affirming a percentage allocation between successful and unsuccessful claims that were distinct where "[i]n the absence of specific time entries to indicate how the attorneys spent their time on the distinct claims, the Court reasonably used the information available to it to estimate a proper division of time."); Hensley, 461 U.S. at 433-36 (Where documentation is inadequate and/or the petitioning party enjoyed only partial success, the district court is not relieved of its obligation to award a reasonable fee and in doing so it may fashion a reasonable fee based on the reliable information available); Phetosomphone, 984 F.2d at 7 ("it does not follow that the district court is prevented from eliminating hours attributable to state-law claims where, as here, the court reasonably concludes that there is not a complete overlap and separation is proper. Indeed, in Hensley itself, where the successful and unsuccessful claims were closely related, the Supreme Court said generally that '[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'") (quoting Hensley, 461 U.S. at 436-37); Lanni v. New Jersey, 259 F.3d 146, 151 (3d Cir. 2001) (upholding downward adjustment of twenty-five percent for time spent pursuing unsuccessful claims).

Once an appropriate number of hours can be determined, "a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."   Rode, 892 F.2d at 1183.   When determining a reasonable hourly rate the court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."   Id. at 1183.

Here, the claimed time is submitted only for the legal services of two attorneys and the hourly rate requested by each is not challenged by defendant.   The rates of $540.00 and $350.00 per hour are reflective of very skilled attorneys in the specialized area of consumer rights and such skills and expertise appropriately are taken into account in conducting a review of the entire petition.

From the onset of litigation through August 15, 2002 (Time Period A), Vallies had eleven/twelve claims at issue.   Of these, only Count III survived and proved successful.   During this period, Count III was not at the forefront of the litigation.   Nor was it the center of parties' and the court's focus.   It was one of four TILA claims set forth in the complaint and the amended complaint.   The defendant's motion to dismiss challenged three groups of counts, two of the TILA counts, the Banking Code counts and the Goods and Services Installment Sales Act counts.   The Banking Code and Goods and Services Installment Sales Act claims were distinct claims. Consequently, a reduction of 40% of class counsel's time is warranted for the basic reason that fair portion of the pleadings and briefings during this time were devoted to unsuccessful claims. Additionally, prior to reduction, a total of 9.25 hours will be eliminated from Attorney Malakoff's hours because of the failure to provide any description of the tasks performed.

During Time Period A class counsel claim a total of 439.23 billable hours, with attorney Malakoff claiming 382.98 hours and attorney Brady claiming 56.25 hours.   Much of this time is designated as time spent reviewing and researching the case, drafting the two complaints, preparing responses to defendant's motions, conferences, and so forth.   At no point does either attorney distinguish which count(s) they were working on.

While class counsel argues that much of the emphasis during the early stages was on the TILA violations, and particularly Count III, the inescapable fact remains that the TILA claims were only one of several groupings of consumer rights claims in plaintiffs' arsenal and a significant

amount of time was devoted to the claims in the other groupings.   While arising from the same transaction, the Banking Code and the Goods and Services Installment Sales Act counts required proof of separate operative facts pursuant to different legal theories.   On these levels they were not closely related to Count III.   Against this backdrop, class counsel has an obligation to present time entries that will enable this court to distinguish between time devoted to the successful and unsuccessful claims.   See McKenna, 582 F.3d at 458 (A fee applicant must "maintain billing time in a manner that will enable a reviewing court to identify distinct claims.").   This they failed to do and therefore a percentage reduction is appropriate.

A reduction of 50% is warranted during Time Period.   A reduction of 80% as requested by defendant is excessive and unreasonable.   As Hensley observes, a mathematical equation is not appropriate in determining what is a reasonable fee, and therefore all relevant factors are to be considered.   Hensely, 461 U.S. at 435.   A fair portion of the initial research and analysis applied to all counts, including Count III, and the TILA counts were a prominent component of the amended complaint.   It follows that a significant portion of the documented hours cannot be discarded as irrelevant time.   In contrast, a 50% reduction of claimed hours beyond the 5% blanket reduction conceded by class counsel appropriately accounts for the time devoted to the unsuccessful counts.

Prior to applying the 50% reduction a total of 9.25 hours will be removed from attorney Malakoff's claimed time.   The hours recorded on Exhibit C for the dates 6/25/2001,7/1/2001, 7/2/2001, 7/3/2001, and 7/4/2001, totaling 9.25 hours, provide no description of the activity undertaken and are listed only as court papers.   These entries are extremely vague and therefore will be excluded from compensable time.

Defendant's contention that the additional entries that merely reference "review" and "research" or "review new case" should likewise be excluded as impermissibly vague is

13

unavailing.   The time log indicates that the activities were devoted to analyzing, researching and preparing the complaints.   Such activities would of course include the preparation needed to do so in a manner that would withstand a formidable attack by defendant, which was ultimately what happened.   They would also include a well-grounded understanding of which claims would warrant pursuing sophisticated legal efforts and/or novel theories of recovery.   Thus, it would not be appropriate to compartmentalize the time entries that were devoted to understanding the overall scenario unfolding in the litigation in the manner advocated by defendant.

After a reduction of 9.25 hours from attorney Malakoff's time, a 50% reduction of the total billable hours in Time Period A results in 214.68 hours: 186.56 hours for attorney Malakoff and 28.12 hours for attorney Brady.   At the rate of $540 per hour for attorney Malakoff and $350 per hour for attorney Brady, the total lodestar award during Time Period A is: $100,742.40 and $9,842.00, totaling $110,584.40.

During Time Period B, from August 16, 2002, until December 17, 2004, Vallies filed a variety of motions which class counsel now claim supported and furthered their strategy of obtaining immediate review of the dismissal of Count III.   While the prominence of Count III ultimately became evident, there were many aspects of litigation during this period that bore little to no relevance to the success of that claim.   As a result, class counsel's rose-colored view of this period (which no doubt was formed with the benefit of hindsight) is unpersuasive and the claimed hours will be reduced to be more reflective of the actual time spent on the prevailing claim.   The billable hours in Time Period B warrant a 50% reduction.

The motions filed by Vallies during Time Period B raised a variety of issues that had little, if any, connection to the success Count III.   For example, a sizeable number of hours were spent on the motion to enter final judgment under Rule 54(b).   While class counsel contends the Rule 54(b) motion was strategic to the immediate appeal of Count III, the actual framework of the

14

motion bears no evidence of this strategy.   The motion sought final rulings on Count VI and

Count VII.   And while these counts needed to be resolved before an appeal could be taken on

Count III, the proposed resolution of the merits of Counts VI and VII did not advance the viability

or enhance the value of Count III.   <u>See</u> Motion to Enter Final Judgment (Doc. No. 36) and Brief in

Support (Doc. No. 37).   This is further evidenced by the fact that class counsel recognized as

much when he convinced Vallies to withdraw the motion in April of 2003.   <u>See</u> Stipulation (Doc.

No. 43).

Additionally, substantial portions of other motions filed during Time Period B did not

materially advance the recovery on or value of Count III.   In this regard Vallies filed motions for

class certification and a motion for declaratory relief and permanent injunction, each of which

pertained to all counts.   While some of this time was devoted to navigating the potential obstacle

that the panel had created in <u>Colbert v. Dymacol, Inc.</u>, 2002 WL 1974538 (3d Cir. August 28,

2002), much of this effort was devoted to causes beyond those reflected in the ultimate judgment

obtained.   Time was also spent determining the best course to pursue after that obstacle was

removed, and the chosen course had no bearing on the viability or value of Count III.   <u>See</u>

Stipulation (Doc. No. 43) (stipulating to Sky Bank renewing its summary judgment motion) and

Stipulation (Doc. No. 45) (extending Vallies' time to respond to that motion).   As a result a fair

portion of this time also properly is excluded.

In contrast, defendant's contention that all of the hours in Time Period B should be

excluded is untenable.   Vallies did construct a motion for reconsideration which reflected the

position that prevailed in the Third Circuit.   While there are situations where it would be improper

to bill one's client for such a motion, where it seeks to apprise the court of the actual law and avoid

the expenditure of additional resources the motion is a reasonable undertaking in furtherance of a

prevailing position.   Similarly, the panel's decision in <u>Colbert</u> had the potential to preclude all

15

recovery on Count III and defendant sought to utilize this potential to its fullest effect.   Had class counsel acceded to this defense the case would have ended and there would have been no recovery on Count III.   Therefore, it would be improper to follow defendant's request to deny all compensation during this time period.

A reduction of 50% is sufficient to eliminate time spent on the unsuccessful claims during Time Period B.   On the one hand, class counsel cannot be expected to break down the number of minutes spent on each count while constructing briefs and motions that pertain to or serve multiple strategies in advancing complex litigation.   On the other, substantial time was devoted to matters that did not contribute to the success of Count III.   This allocation strikes the appropriate balance for Time Period B.

Attorney Malakoff claims a total of 206.63 hours.   A 50% reduction results in 103.32 billable hours.   At the rate of $540, the total amount is $55,790.10.   Attorney Brady's claimed time is 309.06 hours.   A 50% reduction results in 154.53 billable hours.    At a rate of $350, the total amount is $54,085.50.   A total of $109,875.60 will be awarded for Time Period B.

Time Period C spans December 18, 2004, through January 5, 2006.   The only issue during this time period was liability under Count III.   Defendant essentially concedes that in theory all the fees during this period are recoverable.   It nonetheless contends that 3.5 hours of attorney Malakoff's time should be excluded as impermissibly vague because the identified task is described only as "research."   Defendant's position is wide of the mark because there is no basis to attribute the research to any activity other than establishing liability under the prevailing claim. In addition, class counsel took blanket deductions and excluded certain entries from their claimed compensable time.   Therefore, the recoverable hours remain as petitioned.

Attorney Malakoff's claims a total of 77.06 hours.   At the rate of $540, the total amount is $41,612.40.   Attorney Brady's claimed time is 212.44 hours.   At the rate of $350, the total

16

amount is $74,354.00.    A total of $115,966.40 will be awarded for Time Period C.

Finally, Time Period D spans from January 6, 2006, through December 10, 2007.   During this period the parties were focused on two main issues: discovery on actual damages and the defendant's motion for summary judgment of Count III based on a theory of agency.   The time spent on the summary judgment motion is compensable because defendant sought to shield itself from all liability under the theory the Fitts acted as Sky Bank's agent in providing the TILA disclosures.   Plaintiffs had no choice but to cautiously and zealously attempt to defeat this defense and defendant's position ultimately was rejected.

Defendant skillfully argues that the discovery time should be excluded because it pertained only to actual damages under Count III.   It also challenges a number of entries during this period as being impermissibly vague.

Defendant's position overlooks the fact that the discovery was aimed at class member identification as well as actual damages.   It also contributed to the resolution of the litigation. Defendant's resistance to this discovery was clear, see defendant's Brief in Opposition (Doc. No. 63) and Motion to Stay (Doc. No. 99), and its pleas to avoid the same consistently were rejected. See Order of October 25, 2007.   The parties entered into the stipulation establishing the recovered judgment within a month after it became clear that defendant would be required to parse through 54,000 loan files as part of the authorized class certification and damages discovery.   Under these circumstances it is clear that the time spent on the discovery for class certification and actual damages as well as that spent on opposing defendant's motion to stay were instrumental in bringing about the agreement that resulted in the prevailing claim.

Nevertheless, a reduction to this time is warranted because the actual composition of the motions and the pursuit of information pertaining to actual damages did not pertain to the statutory damages claim on which plaintiffs ultimately prevailed.   Defendant identifies approximately

17

135.5 hours by attorney Malakoff and 249.5 hours by attorney Brady that are focused solely on discovery/stay issues and requests a 50% reduction of those hours.   Given that these hours were devoted in part to obtaining class member identification and did contribute in a meaningful way to producing the judgment obtained, the claimed hours will be reduced by 25% to reflect an allocation between (1) the identification of class members and the influence the pursuit of discovery/opposing the stay had on producing the agreement and (2) the time actually expended in pursuit of information that was not relevant to the relief awarded at Count III.

Defendant's contention that attorney Malakoff accumulated 32.5 hours that have impermissibly vague descriptions is unavailing.   When viewed in conjunction with the surrounding entries and the docket, the nature of the time expended is relatively clear.   Any remaining ambiguity or inadequacy is accounted for sufficiently in the 25% reduction.

Attorney Malakoff claims a total of 206.63 hours, 135.5 of which were devoted to the issues of discovery and stay.   A 25% reduction of the 135.5 hours is 101.62 hours, which when combined with 70.5 hours results in a total of 172.12 hours.   At the rate of $540, the total amount is $92,944.80.   Attorney Brady's claimed hours are 309.06, 249.5 of which were devoted to the issues of discovery and stay.   A 25% reduction of the 249.5 hours is 187.12 hours, which when combined with 59.56 hours results in a total of 246.68 hours.   At the rate of $350, the total amount is $86,338.00.   A total of $179,282.80 will be awarded for Time Period D.

Defendant also objects to the reasonableness of the requested award based on class counsel's timekeeping in quarter hour increments.   Although six minute increments appear to be more desirable to defense counsel, class counsel's time keeping is sufficient under the circumstances.   First, the potential for imprecision has been taken into account in setting the percentage reductions set forth above.   Second, the billing records reflect an extensive period of time over a number of years.   There is not one scintilla of evidence to suggest that class counsel

regularly rounded their entries to defendant's disadvantage.   Given these circumstance, billing in quarter hour increments over such a lengthy period of time had the equal potential to result in the under-recording of time.   Furthermore, the additional detail and attention in tracking time as demanded by defendant over such a lengthy period might in itself have produced an unnecessary accumulation of additional increments of chargeable time. Consequently, the potential for any inexactness in class counsel's favor properly is limited to an additional factor bearing on the percentage allocations made as to the time devoted to the successful claim.

Plaintiffs seek costs and expenses in the amount of $7,777.47.   Defendant does not contest these costs and expenses.   As a consequence they will be added to the award.

For the reasons noted above, the plaintiff class' petition will be granted in part and denied in part.   The judgment will be amended to include an additional $523,486.17 for attorney fees, costs and expenses.   Appropriate orders will follow.


Date: September 28, 2011


s/David Stewart Cercone
David Stewart Cercone
United States District Judge



cc:     Michael P. Malakoff, Esquire
        Richard E. Shenkan, Esquire
        Virginia Shenkan, Esquire
        Alan S. Kaplinsky, Esquire
        Carl G. Roberts, Esquire
        Jeremy T. Rosenblum, Esquire
        Martin C. Bryce, Jr., Esquire

        (*Via CM/ECF Electronic Mail*)