## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS R. VALLIES**, individually and on behalf of all similarly situated motor vehicle buyers,<br><br>              Plaintiffs,<br>    v.<br><br>**SKY BANK**, an Ohio bank, licensed to do business in the Commonwealth of Pennsylvania,<br><br>           Defendant. | Civil Action No.: 01-1438 |

## PLAINTIFFS' BRIEF IN SUPPORT OF STATUTORY FEES ON FEES

## INTRODUCTION

Pending before this Honorable Court is Plaintiffs' September 19, 2011 Supplemental Declaration for Statutory Attorney's Fees. *See* Document **180**, construing this filing as a Motion for Attorney's Fees and Costs. At that time, the requested fees (substantially discounted) were $168,324.75 (Document **180-2**) and the requested costs were $19,759.85 (Document **179**). Since that time, the fees have increased slightly mostly in connection with this Court's September 21, 2011 "Fee on Fee" Briefing Order. Document **186**.

Fortunately at this final "Fee on Fee" stage, the Parties radically different views of a reasonable attorney's fee have been resolved by this Honorable Court in its September 28, 2011 Opinion ("Op."). *See* Document **188**. There is, therefore, no need to re-event the proverbial wheel in that this Honorable Court has already decided most of the attorney fee issues that had been in dispute. Respectfully that "law of this case" governs the current statutory "Fee on Fee" proceedings. In that Opinion, this Honorable Court succinctly captured its final conclusions holding as to the claimed reasonable fees and costs:

> After making adjustments to the specific hours claimed primarily to eliminate time spent on unsuccessful claims and issues, the court will approve an award of $515,708.70 in attorney fees and costs of $7,777.47, for a total award of $523,486.17.

Op., p. 1.

## STATEMENT OF PRIOR FEE PROCEEDINGS

With the benefit of this Honorable Court's September 28, 2011 Opinion, with rare exceptions, it is possible to apply the fee law of this Honorable Court to the remaining statutory "Fee on Fee" issue now pending[1]. This Honorable Court's fee reductions primarily arose

---

[1] Earlier the Parties had advanced positions that were quite different from that of this Honorable Court. Class Counsel had believed that a fee award of $692,605.65 (exclusive of costs) was reasonable and the Defendant had concluded that a fee award of no more than $203,594.15 (exclusive of costs) was reasonable. There was no dispute as to Class Counsel's claimed hourly rates and/or claimed costs and expenses. As to Class Counsel's

because Class Counsel had not sufficiently taken into account and reduced their actual time charges to reflect that they had prevailed on only one Count out of the eleven/twelve Counts, i.e. they had only prevailed on Plaintiffs' Truth-in-Lending Act ("TILA") Count III.

Class Counsel had placed their time charges into eleven categories during the relevant time period and the Defendants had placed Class Counsel's time into four categories, which they labeled as "Time Period A" through "Time Period D."  This Court, in its Opinion, in determining a reasonable fee award, adopted the Defendant's four categories.   The overall thrust of Defendant's successful time reductions, therefore, may be succinctly summarized by Defendant's argument with respect to "Time Period A" wherein this Court stated:

> As noted in defendant's response and opposition to the motion for award of attorney fees, the course of the litigation reflects four somewhat distinct periods of development.  Time Period A spans from the filing of the initial complaint until the court granted in-part defendant's partial motion to dismiss on August 15, 2002.  During this time all twelve counts/claims for recovery were at issue and the pleadings and motions were not specific to one individual count or particular group of counts.

Op., **p. 6**.

With rare exception, when this Court reduced Class Counsel's time, that time was reduced because this Honorable Court found that Plaintiffs had expended time unrelated to Count III (the Count upon which Plaintiffs' ultimately prevailed) and therefore additional time reductions were required beyond that suggested by Plaintiffs, but not to the extent requested by Defendant.  Respectfully, this Honorable Court's discussion of the time reductions within each

---

claimed hourly rates, the Court in its Opinion recognized, "the claimed time is submitted for only the legal services of two attorneys and the hourly rate requested by each is not challenged by Defendant," Op. **p. 12**.    In order to avoid any claim of duplication or excessiveness, although both principal Class Counsel attorneys (Michael P. Malakoff and Erin Brady Swenson) had to carefully review their billing records as well as answer Defendant's extensive discovery, to minimize the fee on fee time, only the legal services of one of the Class Counsel, Michael P. Malakoff (and not that of Erin Brady Swenson and/or associates or others that incur time) is requested here.  As to the costs, this Honorable Court recognized that, "Defendant does not contest these costs and expenses."  Op., **p. 19**. It is therefore presumed that the Class Counsel hourly rates and costs and expenses will not be contested in this proceeding, either.

of the four categories ("Time Period A" though "Time Period D") provide "as the law of this case" that should be utilized here to determine an appropriate statutory "Fee on Fee" award.

## TIME PERIOD A

With respect to Time Period A, this Honorable Court held:

> From the onset of litigation through August 15, 2002 (Time Period A), Vallies had eleven/twelve claims at issue. Of these, only Count III survived and proved successful. During this period, Count III was not at the forefront of the litigation. Nor was it the center of parties' and the court's focus. It was one of four TILA claims set forth in the complaint and the amended complaint. The defendant's motion to dismiss challenges three groups of counts, two of the TILA counts, the Banking Code counts and the Goods and Services Installment Sales Act counts. The Banking Code and Goods and Servicers Installment Sales Act claims were distinct claims.

Op., **p. 12**.

## TIME PERIOD B

With respect to Time Period B, this Honorable Court held:

> During Time Period B, from August 16, 2002, until December 17, 2004, Vallies filed a variety of motions which class counsel now claim supported and furthered their strategy of obtaining immediate review of the dismissal of Count III. While the prominence of Count III ultimately became evident, there were many aspects of litigation during this period that bore little to no relevance to the success of the claim.

Op., **p. 14**.

## TIME PERIOD C

With respect to Time Period C, this Honorable Court held:

> Time Period C spans December 18, 2004, through January 5, 2006. The only issue during this time period was liability under Count III. Defendant essentially concedes that in theory all the fees during this period are recoverable. It nonetheless contends that 3.5 hours of attorney Malakoff's time should be excluded as impermissibly vague because the identified task is described only

> as "research."  Defendant's position is wide of the mark because there is no basis to attribute the research to any activity other than establishing liability under the prevailing claim.  In addition, class counsel took blanket reductions and excluded certain entries from their claimed compensable time.  Therefore, the recoverable hours remain as petitioned.

Op., **p. 16**.

**TIME PERIOD D**

With respect to Time Period D, this Honorable Court held:

> Finally, Time Period D spans from January 6, 2006 through December 10, 2007.  During this period the parties were focused on two main issues: discovery on actual damages and the defendant's motion for summary judgment of Count III based on a theory of agency.  The time spend on the summary judgment motion is compensable because defendant sough to shield itself from all liability under the theory the Fitts acted as Sky Bank's agent in providing the TILA disclosures.  Plaintiffs had no choice but to cautiously and zealously attempt to defeat this defense and defendant's position ultimately was rejected.

Op., **p. 17**.

The key differentiation between where there were time reductions and where there were none, depended on whether Class Counsel had expended time unrelated to the Count upon which Plaintiffs ultimately prevailed, i.e. TILA Count III.  It is, therefore, significant to recognize that Plaintiffs one and only claim during this stage of the fee proceeding is focused on only one claim – statutory attorney's fees under TILA, 15 U.S.C. §1640(a)(3).  Therefore Class Counsel's statutory "Fee on Fee" claim is virtually identical to their fee claim for Time Period C, where this Court held, "the recoverable hours remain as petitioned."  Op., **p. 16**.

With respect to the multitude of Defendant's other fee defenses, i.e. other than those defenses dealing with the correct allocation of time between winning and losing claims those defenses were rejected by this Court.  Presumably under the "law of this case" these defenses, if raised, will be rejected once again.

In this connection, the Court rejected Defendant's, "impermissibly vague," defense holding that:

> The time log indicates that the activities were devoted to analyzing, researching and preparing the complaints. Such activities would of course include preparation needed to do so in a manner that would withstand a formidable attack by defendant, which was ultimately what happened.

Op., **p. 13-14**.

And this Honorable Court rejected Defendant's, "six minute time increment," defense holding:

> Defendant also objected to the reasonableness of the requested award based on class counsel's timekeeping in quarter hour increments. Although six minute increments appear to be more desirable to defense counsel, class counsel's time keeping is sufficient under the circumstances. First, the potential for imprecision has been taken into account in setting the percentage reductions set forth above. Second, the billing records reflect an extensive period of time over a number of years. There is not one scintilla of evidence to suggest that class counsel regularly rounded their entries to defendant's disadvantage. Given these circumstance, billing in quarter hour increments over such a lengthy period of time had the equal potential to result in the under-recording of time.

Op., **p. 18-19**.

Finally, this Honorable Court recognized that it is Class Counsel's burden to establish that the amount of time was not unreasonably incurred stating:

> The party seeking fees has the burden to prove that the time spent on unsuccessful claims contributed to the success of the claims on which it prevailed…
> A reduction based merely on the ratio of successful and unsuccessful claims is inappropriate…
> <u>Instead the court's discretion is to be guided by the reliable information available, including the time that actually was spent on the successful claim, the tasks undertaken, the recovery obtained and so forth.</u>

(Emphasis Added.) Op., **p. 10**.  Therefore, with the benefit of this Court's guidance, Class Counsel's Statement of Facts, set forth below, focuses on that information that this Court in its September 28, 2011 Opinion, deemed relevant.

## STATEMENT OF FACTS

Given the information that this Honorable Court deemed relevant – "the time that actually was spent on the successful [fee] claims," and "the tasks undertaken," and, "the recovery obtained and so forth," (Op., **p. 10**) the following facts may be helpful to the Court in resolving the remaining statutory fee disputes.

**First**, the most important fact is whether the results were excellent or not.  *See* Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) where the Supreme Court held, "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  The Hensley Court went on to state, "we hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. §1988."  *Id*, at 439.  Plaintiffs', here, recovered a reasonable fee award for their Class Counsel of over 250% (i.e. $515,708.70) the fee that the Defendant had vigorously argued to should be awarded (i.e. this Court awarded fees of $515,708.70 and the Defendant's highest suggested fee was $203,594.15).

And with respect to the statutory "Fee on Fee" claim there is no allocation or reduction at issue here because there was virtually no time expended unrelated to Class Counsel's successful fee claims, with one exception, Class Counsel's attempt to obtain fee discovery from the Defendant, which this Honorable Court denied by Orders dated September 2, 2011 and

September 7, 2011.  *See* Documents **175** and **178**.  Class Counsel recognizes that under the "law of this case" no award should be made for this time[2].

To assist this Honorable Court in determining the appropriate statutory reasonable fee award, Class Counsel has divided their time into seven categories with suggested appropriate fee charge reductions.  Respectfully, if there is error, it has been made on the high side with the hopes of eliminating or reducing the remaining fee disputes.  Understandably, Substituted Fee Declaration (filed simultaneously) with attached chart, are summarized below.

**Category I Time Charges (incurred almost exclusively in November 2010) (no time reductions)**

This time, in reality, is not statutory "Fee on Fee" time, but instead related to the initial stage of the case that was ongoing after Class Counsel had filed their initial Fee Petition and Declaration claiming fees.

Class Counsel's initial Fee Petition was filed on October 19, 2010.  Document **145**.  It did not contain, unlike this fee request, an estimated time for future services.  Following that fee petition, Class Counsel was required to attempt to expend a relatively few hours in preparing for and attending this Honorable Court's November 17, 2010 Class Action Settlement Hearing, and preparing final settlement orders.  *See* Documents **151** and **179**.  Also during this time period, Class Counsel had to address a few class administrative issues.  In the aggregate, primarily for their November 2010 Settlement related time charges, Class Counsel is requesting compensation for 8.5 hours.

---

[2] The time expended preparing and pursuing this discovery has been substantially reduced (50% and 75%) as evidenced by Class Counsel's new, updated Declaration and time chart primarily to preserve this issue in the event that an appeal is taken.  Respectfully, if on appeal the "law of the case" changes, Class Counsel reserve the right to decrease their deduction.

**Category II Time Charges (incurred primarily between February 21, 2010 and October 19, 2010) (15% reduction suggested)**

Primarily between February 21, 2010 and October 19, 2010, Class Counsel was researching and preparing their Motion for Attorney's Fees (filed on October 19, 2010). Document **145**. As previously recognized by this Honorable Court, with respect to the earlier phase, but equally true here:

> The time log indicates that the activities were devoted to analyzing, researching and preparing the complaints. Such activities would of course include preparation needed to do so in a manner that would withstand a formidable attack by defendant, which was ultimately what happened.

Op., **p. 14**. Unlike the earlier phase, Class Counsel, Michael P. Malakoff and Erin Brady, had to exercise a heightened view of billing judgment, which required a line by line review of their time records. The law in this District Court required Class Counsel to undertake a far more exacting review of time records and in this ten year old case, those time records were quite extensive.

Today, is appears that the auditing perfection that used to be required from fee petitioners and the courts is no longer required under the recent Supreme Court decision of <u>Fox v. Vice</u>, 131 S.Ct. 2205, 2216 (2011), wherein the Supreme Court held:

> The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

In addition, in the earlier phase of this case, Class Counsel was required to select, contact and retain fee experts in order to establish the community hourly rate. Here, seven fee experts were selected, contacted and retained to establish a reasonable community hourly rate for class counsel[3]. In addition, Class Counsel believed it necessary to select, contact and retain an

---

[3] Those declarations are filed by former Judge Robert J. Cindrich, James W. Carroll, Jr. (shareholder in the law firm of Rothman Gordon, P.C.), Samuel J. Cordes (partner of the law firm of Stember, Feinstein, Doyle, Payne

economics expert to attest to the non-monetary benefits of this litigation (Dr. Stan Smith) and an expert to attest to the reasonableness of their time charges.  *See* the Declaration of Stewart Rossman, the Director of Litigation of the National Consumer Law Center ("NCLC").

Finally, in response to Defendant's Fee Opposition (consisting of forty pages with an additional sixty pages of exhibits, Document **158**), Plaintiffs' concluded it was necessary to obtain an additional expert, Carolyn Carter, Deputy Directory for Advocacy, NCLC, as to the significance of TILA litigation generally and this TILA case in particular.  *See* Documents **165**. In addition, due to the unwarranted and harsh attacks that Defendant's had made with respect to Dr. Smith's initial declaration, Class Counsel requested Dr. Smith provide a Supplemental Declaration.  Document **163**.  All of this selecting/contacting/retaining of fee experts required reasonable time.  During this time period, Plaintiffs also had to expend reasonable time reviewing other fee petitions filed by other successful class counsel and researching and drafting their own Motion for Attorney's Fees, as well as determine and select various time categories as suggested by the Third Circuit in <u>Lindy Bros. Builders, Inc. v. American Radiator,</u> 540 F.2d 161 (3d Cir. 1973).

**Category III Time Charges (Plaintiffs' Discovery Responses to Defendant's extensive Requests for Production of Documents and Interrogatories) (no time reductions)**

For the two month period, November 19, 2010 to January 27, 2011, Class Counsel was required to expend reasonable time in searching for, obtaining, and reviewing documents and answers in order to respond to Defendant's outstanding Discovery Requests. Defendant's, as evidenced by their Discovery Requests, recognized that during the protracted

---

& Cordes), David J. Manogue (shareholder in the law firm of Specter Specter Evans & Manogue, P.C.), Timothy P. O'Brien (former Chairperson of the Civil Rights Committee for the Allegheny Bar Association and former member of the Board of Governors of the Allegheny County Bar Association), James M. Pietz (Pietz Law Office, LLC) and Witold Walczak (Legal Director for the American Civil Liberties Union of Pennsylvania).

litigation time period, Class Counsel had been associated with three distinct law firms and Defendant made it explicit that it wanted discovery from all three.   Defendant's defined Plaintiff's attorneys' as follows: "Michael P. Malakoff, Esquire, and/or Erin Brady Swenson, Esquire, and/or the law firm of Malakoff & Brady, P.C. and Malakoff, Doyle & Finberg, P.C." *See* Defendant's First Set of Interrogatories, **¶15**.   Thus Class Counsel in their Verified Objections and Answers to Defendant's First Set of Interrogatories ¶2 stated:

> Plaintiff objects to Defendant's Interrogatories to the extent that they are vague, ambiguous, oppressive, vexatious and unduly burdensome.  Here, the Interrogatories not only include virtually all documents encompassed in this eleven (11) year old lawsuit, but in addition thousands of other documents in numerous other lawsuits extending back 10 years in which there was a fee request. It is noted that because of the length of this case, "Plaintiff's attorneys" include two law firms that have ceased to exist as active entities.  Malakoff, Doyle & Finberg, P.C." ceased to actively exist on or before December 27, 2007 and Malakoff & Brady ceased to actively exist on or about December 31, 2009.

Defendant in its discovery also made it explicit that it expected Class Counsel to not only review their retained hard copies of documents, but in addition to search their various computer hard drives to obtain ESI information that had been electronically stored.

This latter request required Class Counsel to retain the Allegheny County Bar Association endorsed computer firm, bit-x-bit, to locate and search a multitude of hard drives maintained in Pittsburgh, PA and in Salamanca, NY where Class Counsel, Erin Brady, had relocated and where Class Counsel maintained a law office beginning on May 1, 2001, i.e. before the inception of this case.  See Class Counsel's specific Objection to Defendant's term "document" wherein it stated:

> With respect to the "ESI related documents" related information that Defendant has demanded, Plaintiffs were required to retain bit-x-bit at a cost of $1,824.47 to review Plaintiff's attorney's ESI records and make a detailed cost estimate as to what it would cost

> to answer Defendant's ESI related interrogatories and to respond to
> its request for production of documents.  See, bit-x-bit letter dated
> December 22, 2010.

Plaintiffs' Verified Objections and Answers to Defendant's First Set of Interrogatories, ¶10.

To put it mildly, to respond to this discovery was extremely onerous and therefore Class Counsel, by letter dated December 9, 2010 made a reasonable request to forego all discovery in order to avoid this substantial expense.  Class Counsel concluded that <u>foregoing all fee discovery</u> could economically be a "win" "win" for all litigants:

> I [Michael P. Malakoff] have serious reservations whether our
> answers to Defendant's discovery, which will necessitate discovery
> on our end in order to protect Plaintiffs' positions, will have any
> significant effect on any ultimate resolution of our outstanding
> motion for attorney's fees.  It could however, greatly increase the
> amount we will request Defendant to pay in the "fee on fee"
> litigation.  Again, as earlier in the case, Defendant is in a unique
> position to control these discovery costs and expenses.

Class Counsel continued with the following offer to forego all fee discovery:

> A high probability exists that discovery will simply result in the
> other party taking discovery to generate a full and complete
> response.  This process will probably increase the fee or fee costs
> well beyond whatever reduction is obtained from the current fee
> request.  We note that during this period, Defendant will be paying
> not only for its own counsel, but for undersigned counsel as well.
> Therefore if any low hanging fruit arguably exists – that will be
> determined by discovery – a reasonable probability exists that any
> gains will be offset by the costs of the discovery.  Again, this
> should be viewed simply as our perception of economic reality,
> acquired in representing other law firms in fee disputes.  <u>We
> therefore would like to suggest that all parties forego all discovery
> and simply present this case to the Court with experts, but without
> discovery.</u>  (Emphasis Added.)

*See* Class Counsel's Declaration filed on August 15, 2011 at Document 169, Exhibit C.  This time saving offer, as well as a multitude of others, was soundly rejected by Defendant.  Therefore, no reduction has been suggested for this time period.

**Category IV Time Period (mediation with Louis Kushner) (no time reductions)**

Another one of Class Counsel's suggestions was that the Parties agree to request this Honorable Court to appoint a Rule 53 Special Master to assist and resolve the fee dispute and issue a report to this Honorable Court. Class Counsel concluded that such a transparent proceeding could enable the Parties to resolve their fee disputes. Even after the Mediation failed, Plaintiffs' reiterated their willingness by letter dated May 9, 2011, to proceed under Rule 53 with a Special Master to resolve their fee dispute, suggesting that Louis Kushner or Judge Ziegler (or others) would be candidates worthy of consideration. The Defendant, however, disagreed.

On April 8, 2011, this Honorable Court reached a somewhat similar conclusion and appointed Louis Kushner as Mediator to help the Parties' resolve their fee disputes. Document **161**. During this time period, April 1, 2011, to May 2011, Class Counsel and Defendant cooperatively attempting to maximize the possibility of resolving their fee dispute while at the same time attempted to minimize the Mediator's costs and expenses. In this connection, they agreed what information from the extensive Court record should be provided to Mediator Kushner. Prior to the June 14, 2011 Mediation (Document **164**), Class Counsel developed charts and after the mediation various Excel spreadsheets, in an attempt to reach a reasonable fee resolution. The legal activities leading up to, during and after the June 14, 2011, mediation was conducted in good faith by all Parties, and despite reasonable attempts to resolve their fee dispute, the matter could not be resolved. Respectfully, any reduction in Class Counsel's Court Ordered Mediation time (and costs and/or expenses) would make an otherwise reasonable statutory attorney fee unreasonable.

**Category V Time Charges (Class Counsel's preparation of Fee Discovery served on Defendant) (March 2011) (50% fee reduction)** and,

**Category VI (Class Counsel's attempt to Compel Defendant to Answer their outstanding Fee Discovery) (July 25, 2011 to September 11, 2011) (75% fee reduction)**

Class Counsel developed and served discovery on Defendant in its belief that such answers could be of assistance to the Court in issuing a fee award. Although the Defendant's had concluded that discovery from Class Counsel would be helpful to the Court, subsequently they learned from this Courts September 2, 2011 and September 7, 2011 Orders (Documents **175** and **178**) that Class Counsel's discovery would be of no assistance. In light of this Court's comparison of "apples and oranges," and under the now existing "law of this case," no time should be awarded for these time expenditures[4].

**Category VII (incurred on and after October 10, 2011) (no time reductions)**

Class Counsel's time records, for purposes of their Supplemental Fee Declaration, ended on October 10, 2011. To finalize their Declaration and Brief in Support thereof, they estimate that they will expend about ten additional hours during the time period after October 11, 2011 through the date that their Response to Defendant's Opposition is due – November 14, 2011. Document **186**.

## <u>LEGAL ARGUMENT</u>

At an earlier stage of this case, on September 7, 2011, this Honorable Court concluded with respect to Class Counsel that there was no "inordinate amount of time" or any "inefficiency." *See* Document **178**, p. **2**, where this Honorable Court recognized:

> Defendant has not challenged any of class counsel's claimed time
> as reflecting an inordinate amount of time for the task performed
> or otherwise being unseasonable due to inefficiency or inaccuracy.

---

[4] Nonetheless, Class Counsel believes that this fee discovery issue presents important systemic fee discovery questions which they wish to preserve in the event that an appeal is taken. They have therefore requested nominal payments for their time expended on attempting to obtain and pursue this discovery.

> Throughout the litigation defense counsel spent its time reacting to and defending against plaintiffs' claims; class counsel spent its time pursing various claims of liability and damages against defendant and reacting to and defending against the defenses defendant chose to raise.

After ten years of litigation, there has been no change in Class Counsel's billing practices, i.e. the claimed time expended after Class Counsel's previous Fee Petition as well as this one did not involve any "inordinate amount of time or inefficiency."

**The Purpose of a Reasonable Statutory Fee**

In <u>Hensley v. Eckerhard</u>, 461 U.S. 424, 435 (1983), the Supreme Court explained that Congress statutorily authorizes fees to plaintiffs to compensate them for the costs of redressing certain violations; "accordingly, a plaintiff may receive fees <u>for all work relating to the accomplishment of that result, even if the plaintiff failed to prevail on every contention raised.</u>" The Second Circuit expanded on the importance of congressionally authorized fee shifting for the public good in <u>Millea v. Metro-N. R.R. Co.</u>, 2011 WL 3437513 *10 (2d Cir. Aug. 8, 2011), stating, "Congress has already made the policy determination that <u>some claims serve an important public purpose disproportionate to their cash value</u>. We cannot second-guess this legislative policy decision."  In <u>Millea</u>, the Second Circuit went on to recognize the need for fee shifting statutes to attract competent counsel to cases that would otherwise not be economically prudent.  This is because Congress implements fee-shifting statutes exist to "assure that claims of modest cash value can attract competent counsel." *Id*.

In <u>Nigh v. Koons Buick Pontiac GMC</u>, Inc., 478 F.3d 183 (4th Cir. 2007), the Court held that a fee award of $85,083.60 on $1,000 in damages, plus additional fees incurred litigating the case to the Supreme Court (where the plaintiff lost their jury award of $24,000 was appropriate given that the individual plaintiff car buyer recovered the maximum $1,000 statutory recovery).

The Court recognized that the excellent result (i.e. the statutory maximum of $1,000) justified a fee of 85 times that recovery.  This is because enforcement of TILA protects consumers nationwide and the recovery of the statutory maximum ($1,000) justified a fully compensatory fee.

**The Purpose of a Statutory Fee on a Fee Award**

The Third Circuit in <u>Hernandez v. Kalinowski</u>, 146 F.3d 196 (3d Cir.1998), with respect to statutory fee on fees, held that a plaintiffs reasonable fee should not be diminished by subsequent fee litigation.  The Third Circuit held:

> Fees for time spent in preparing a fee petition are included within the meaning of "fee[s] directly and reasonably incurred in proving an actual violation...."  Otherwise the attorney's fee to which he or she is entitled by law is in fact diminished.  For example, assume a plaintiff succeeds on the merits of a civil rights claim and, in doing so, incurs $10,000 in "direct and reasonable" costs and attorney's fees.  That fee represents the attorney's time expended.

*Id*.

The Third Circuit went on to provide a specific example of what Congress mandated in enacting fee shifting statute litigation virtually identical to the TILA statute of fee on fee shifting at issue here.

> Further assume that the plaintiff's attorney is forced to spend an additional $2000 in time to compel the defendant to pay the $10,000 costs and fees owed.  If the plaintiff is not allowed to recover the "fees on fees," the plaintiff would not receive the $2000 to pay the attorney. In the case of an impecunious plaintiff…the end result would be that the attorney would in fact receive a fee based on time that is less than that authorized by law. *To avoid this erosion of an award of attorney's fees*, courts have traditionally interpreted § 1988 to allow for "fees on fees" to guarantee a full recovery of fees.  (emphasis added).

*Id*.  *Also see* <u>Sheffer v. Experian Info. Solutions, Inc.</u>, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003), quoting and expanding on <u>Hernandez</u> *infer.*

**The "But-For" Standard of <u>Fox v. Vice</u>**

The Supreme Court in the recent case of <u>Fox v. Vice</u>, 131 S.Ct. 2205 (2011), seemed to develop a more stringent standard in determining when allocation fee reductions for unsuccessful claims are appropriate. Today, once a party demonstrates "but-for" the unsuccessful claims, the time and charges would have been incurred anyway, that party is entitled to be fully compensated for those charges. *See* <u>Fox</u> wherein the Supreme Court held:

> Under the but-for standard for a recovery of attorney fees in a "mixed" case involving frivolous and non-frivolous claims, the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but <u>whether the costs would have been incurred in the absence of the frivolous allegation</u>; the answers to those inquiries will usually track each other, but when they diverge, it is the second that matters… <u>accordingly, in a "mixed" case involving frivolous and non-frivolous claims, a plaintiff may receive fees for all work relating to the accomplishment of that result, even if the plaintiff failed to prevail on every contention raised.</u> (emphasis added).

*Id* at 2214-2215. Class Counsel here in initially seeking about $700,000 in fees allocated virtually the same amount of reasonable time as they would have had they been requesting $800,000 or $600,000 in statutory attorney's fees. Therefore, with one rare "fee discovery" exception, dealing with Class Counsel's attempt to obtain fee discovery, they are entitled to a fully compensatory fee.

Unlike many cases which present many messy, untidy "but-for" questions (<u>Fox</u> at *2214), the fee charge allocation question here is straight forward. All of Class Counsel's time were directly related, with minor exception for Plaintiff's attempted fee discovery, to obtaining a reasonable statutory fee and there time would have been necessarily incurred irrespective of the amount of the fee requested. To err on the conservative side, Class Counsel have suggested significant fee reductions in many of their fee on fee time categories.

**The Stalingrad Defense**

It is well known that the use of aggressive defense tactics, known as the "Stalingrad Defense" vastly increases the fees, costs and time expended by an adversary.  The First Circuit in Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir. 1992), summarized the strain and increase time charges a bitterly contested Stalingrad Defense places on the plaintiffs counsel, stating:

> Appellants mounted a Stalingrad defense, resisting [Plaintiff] at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree.  Since a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance…. the work done on these unsuccessful claims was sufficiently interconnected with the causes of action upon which appellee prevailed, we refuse to grant the requested reductions.
> Discrepancies are explained largely by what we have referred to as the "Stalingrad defense."  While this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside.  The defendants suffer the adverse effects of that downside here.  There is a corollary to the duty to defend to the utmost-the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client.  Although tension exists between the two duties, they apply concurrently. When attorneys blindly pursue the former, their chosen course of action may sometimes prove to be at the expense of the latter.

Defendants have the right to assert the Stalingrad Defense, but in doing so they bear the risk of increased fees and costs.  Compare City of Riverside vs. Rivera, 477 U.S. 561, 581, fn.11 (1986).  Therein the Supreme Court stated, "that a party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."

Appellate Courts have long held that those who attempt failed Stalingrad Defenses may not then complain over the increased amount of time it forced its adversary to spend.  *See* Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 298 (1st Cir. 2001) ("The Commonwealth mounted a Stalingrad defense of Regulation 29, battling from rock to rock and tree to tree.  After

setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the Commonwealth to castigate the plaintiffs for putting too many troops into the field"); Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir. 1980); *See also*; Wolf v. Frank, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side); Weitz Co. v. MH Washington, 631 F.3d 510, 530 (8th Cir. 2011) (same).

Indeed, "because a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998).  Thus, Courts should not reward a defendant for its vehement Stalingrad defenses, as Defendants are well aware of the risks of engaging in such trench warfare.

**The Non-Monetary Components of a Statutory Fee on Fee Award (repeat players)**

The cost and expense of litigation is not simply driven by the monetary amount in controversy.  That is because issues, especially systematic issues, have economic consequences outside the litigation.  Such indirect economic interest has long been recognized by Congress and the Third Circuit.  *See* Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 163-64 (3d Cir. 2001).

In Newton the Third Circuit recognized that systemic class litigation can potentially force a litigant to settle because of a slight risk of ruinous liability and therefore, Congress enacted Appellant Rule 23(f), to allow a litigant to take an interlocutory appeal on class certifications. The Newton Court stated with respect to a defendant that:

> On [interpreting] Rule 23(f) motions…the Committee Note is
> always a good starting point…The Note sketches a rough outline
> of the types of cases courts of appeals should review: "Permission
> is most likely to be granted when the certification decision turns on

a novel or unsettled question of law, or when, as a practical matter, the decision of certification is likely dispositive of the litigation." An order granting certification…<u>may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability</u>.  We can glean from the Note, therefore, when class certification places inordinate or hydraulic pressure on defendants to settle, avoiding the risk, however small, of potentially ruinous liability [appellate courts are guided to exercise discretionary jurisdiction over appeals].  *See; e.g. Blair v. Equifax Check Services, Inc*., 181 F.3d 832, 835 (7th Cir. 1999)(Rule 26(f) has been interpreted to limit the stakes of litigation in cases where the chances of a negative outcome, no matter how small, would force settlement.  In other words, when the stakes are large and the risk of a settlement or other disposition that does not reflect the merits of the claim is substantial, an appeal under Rule 23(f) is in order).

Here Class Counsel are repeat Class Action players who were required to defend their time charges against harsh systematic attacks on their time records.  The Defendant's attempt to take advantage that class counsel would settle for less than a reasonable statutory fee rather than risk the potentially ruinous effect on an attorney fee ruling that could have an adverse impact on their entire time bank containing all of their hours in all of their other litigation.  Apparently, its belief generated the exceptionally low ball settlement offers of less than half of what this Court eventually held was reasonable statutory fee award.

Defendant itself as a repeat player substantial interest beyond the immediate litigation in TILA actions.  The Fourth Circuit recognized that Defendants in TILA suits are more likely to be repeat violators than plaintiffs are to be repeat victims, which economically encourages Defendants to engage in a Stalingrad Defense as stated by the Forth Circuit in <u>Nigh</u>:

the risk of losing more in costs and fees than is gained in refunded damages in one particular appeal may well be a risk worth taking: <u>what is lost in fees in that case may be saved in damages in a later one</u>.  If *Nigh* or like Defendants ever find themselves in TILA litigation of this sort again, they can now rest assured that its damages will be capped at $1,000.  (emphasis added)

The same fee factors considered in <u>Nigh</u> should be considered here in awarding Class Counsel a reasonable fee award.

<u>**CONCLUSION**</u>

Respectfully, for the reasons stated above, Plaintiffs' Fee on Fee Petition should be granted.  Class Counsel therefore requests a reasonable statutory fee on fee award of $\$_____$ and a cost award of $\$\_\_\_\_\_$ for a total recovery of $\$\_\_\_\_\_$[5].  A proposed order of court is attached hereto.

Respectfully submitted,

MICHAEL P. MALAKOFF, P.C.

By: */s/ Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pa. Id. #11048
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: 412.281.4217
Facsimile: 412.281.3262
malakoff@mpmalakoff.com

*Attorneys to Louis R. Vallies and all other*
*motor vehicle buyers similarly situated*

---

[5] Plaintiffs are triple-checking their time charges and anticipate completion of their review by tomorrow, i.e. Wednesday, October 12 2011.

## CERTIFICATE OF SERVICE

It hereby certify that on this **11th day of October 2011**, a true and correct copy of the foregoing **Brief in Support of Statutory Fees on Fees** was served upon all interested parties via the Court's electronically filing system:

Marty Bryce, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599

*/s/ Michael P. Malakoff*
Michael P. Malakoff