**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LOUIS R. VALLIES**, individually and on behalf of all similarly situated motor vehicle buyers,<br><br>     Plaintiffs,<br><br> v.<br><br>**SKY BANK**, an Ohio bank, licensed to do business in the Commonwealth of Pennsylvania,<br><br>     Defendant. | Civil Action No.: 01-1438 |

## REPLY BRIEF IN SUPPORT OF STATUTORY FEES-ON-FEES

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... i

INTRODUCTION ......................................................................................................... 1

LEGAL ARGUMENTS.................................................................................................. 5

   **I.**   **Class Counsel's Settlement Time is Compensable** ............................... 5

   **II.**   **Class Counsel's Estimated Future Time is Compensable** ......................... 5

   **III.**   **Class Counsel's Communications with Pittsburgh Attorney's to Establish the "Community Market Rate," is Compensable** ................... 6

   **IV.**   **Class Counsel's Consultations and Payments with Experts to Obtain Declarations on the Complexity, Importance and non-Monetary Values of this Litigation is Compensable** ................................................ 8

   **V.**   **Class Counsel's Time for Responding To Defendant's Onerous Discovery Requests is Compensable** ................................................ 9

   **VI.**   **Class Counsel's Time Expended Preparing and Pursuing Discovery Upon Defendants (under the law of this case) is not Compensable** .............. 11

   **VII.**   **Class Counsel's Mediation Time and Costs is Compensable** ................ 11

   **VIII.**   **Class Counsel's Reasonable Time Expended on Preparing and Pursuing their Fee-on-Fee Brief, Should not be Discounted** ................ 14

   **IX.**   **Where the Results are Excellent, Class Counsel Should not be Penalized for a Blanket Fee Reduction of 30%** .................................. 15

   **X.**   **Defendant's Stalingrad Defense Strategies** .................................... 18

CONCLUSION.......................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... I

# TABLE OF AUTHORITIES

## Cases

Blum v. Stenson, 465 U.S. 888 (1984) ........................................................................ 6

Brown v. City of Pittsburgh, 2010 WL 2207935 (W.D.Pa. 2010) .............................. 15

Checkpoint Systems, Inc. v. All – Tag Security et al, 2011 WL 5237573 (E.D. Pa. 2011) ......... 18

Christianburg Garmet Co. v. EEOC, 434 U.S. 412 (1978).......................................... 12

Codepink Pittsburgh Woman for Peace, et al v. United States Secret Service, et al, 09-cv-1235 (W.D. Pa., Lancaster, J.) .......................................................................... 17

Cunningham v. City of McKeesport, 478 U.S. 1015 (1986) .......................................... 7

Cunningham v. City of McKeesport, 753 F.2d 262 (3d. Cir 1985)................................. 7

District of Columbia v. Heller, 554 U.S. 570 (2008).................................................... 17

EEOC v. Fed. Express Corp., 537 F. Supp 2d 700 (M.D. Pa. 2005)............................ 20

Evans v. Jeff D., 475 U.S. 717 (1986) ........................................................................ 9
Fox v. Vice, 131 S.Ct. 2205 (June 6, 2011) .................................................... 2, 3, 8, 16
Grant v. Martinez, 973 F.2d 96 (2d Cir. 1992) ............................................................. 1
Hensley v. Eckerhart, 461 U.S. 424 (1983) ................................................... 2, 8, 16, 19
Hernandez v. Kalinowski, 146 F.3d 196 (3d. Cir 1998) ............................................... 11
In Re Diet Drugs, 582 F.3d 524 (3d. Cir 2009) ........................................................... 15
In Re Holocaust Victim Assets Litigation, 270 F.Supp.2d 313 (E.D. N.Y. 2002). ....................... 9
Joy v. Manufacturing Corp., v. Pullman, Co., 742 F.Supp 911 (W.D.Pa. 1990) ........................... 7
McGowan v. King, Inc., 661 F.2d 48, 51 (5th Cir. 1981) ............................................. 19
Newman v. Piggie Park Enter. Inc., 390 U.S. 400 (1963) .............................................. 12
Nigh v. Koon Buick Pontiac GMC, Inc.  478 F.3d 183 (4th Cir. 2007)............................. 14, 15
O'Neil v. Sears, Roebuck & Co., 108 F. Supp. 2d 443 (E.D. Pa. 2000) .................................. 20
Riverside v. Rivera, 477 U.S. 561, 581 n.11 (1986)................................................... 19
Rode v. Dellarciprete, 892 F.2d 1177 (3d. Cir 1990) ................................................. 15
Wilkowski v. International Brotherhood of Boilermakers Iron Shipbuilders Local Union, 2011
    WL 1433704 (W.D. Pa 2010) ....................................................................... 8

## Statutes

28 U.S.C. §1961(b) ................................................................................ 20
42 Pa.C.S.A. §5949 ................................................................................ 13

## Other Authorities

Truth-in-Lending Act ................................................................. 9, 11, 14, 15, 18
Truth-in-Lending Act 15 U.S.C. §1640(a)(3) ....................................................... 12

## Rules

Fed. R. Civ. P. 37(a)(1)........................................................................... 10
Fed. R. Civ. P. 53 ................................................................................ 13
Fed. R. Civ. P. 53(e) ............................................................................. 13
Fed. R. Civ. P. 68 ................................................................................ 14

## INTRODUCTION

Now pending is Defendant's Opposition to Class Counsel's Motion for an Award of "Fees on Fees" (hereinafter "Defendant's Opposition" or "Opp."). Document 195. This Opposition is filed in Response to Plaintiffs' Motion for an Award of Reasonable "Lodestar" Attorney's Fees (hereinafter "Initial Fee Brief"). Document 145.

Basically the same fee defenses raised have already been rejected by this Honorable Court. *See* Documents 158 and this Honorable Court's the September 28, 2011, Fee Opinion (hereinafter "Op."). Document 188. But the defense terminology has changed.

Then, as now, Defendant suggested that this Honorable Court use a percentage approach, highlighting that Class Counsel is seeking "close to one half of [this Honorable Court's Fee Award] $515,708.75." Opp., p. 9.[1] Defendant again asserts that Class Counsel's time records are too vague to base an attorney fee award and, therefore, this Honorable Court cannot "distinguish between time spent on successful and unsuccessful claims." Opp., p. 2. Now there is only <u>one</u> fee "claim" and there is no need to allocate.

Defendant's concern about unnecessary duplication, likewise, has no application because the only compensation requested is for <u>one</u> attorney (i.e. Michael P. Malakoff). No fee-on-fee claim has been made for time expended by co-Class Counsel, Erin Brady-Swenson, for her reasonable fee-on-fee time or any associate or paralegal as evidenced by the time charges.

Defendant, once again, overlooks the four major fee factors that are the Lodestars of a reasonable Lodestar fee award.

---

[1] A fee proportionality approach would defeat the economic incentives that Congress intended to negate in the fee shifting statute. *See* <u>Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986), awarding plaintiff's counsel $245,450.00 fees on a $33,350.00 recovery. *Id* at 580. *See also* <u>Grant v. Martinez</u>, 973 F.2d 96, 101 (2d Cir. 1992) awarding plaintiff's counsel $500,000.00 on a $60,000.00 settlement. In this fee-on-fee portion of this case, Class Counsel obtained excellent results and recovered two and a half times the fee that Defendant (after extensive briefing) contended should be awarded.

1. That a plaintiff can recovery attorney's fees for claims on which they are not victorious.

2. That a plaintiff does not have to prevail on every fee-on-fee contention to recover a fully compensatory fee-on-fee award.

3. That the result is primarily what matters.  [It is believed that Class Counsel obtained a class recovery (a net of $500,000.00) and that no other class counsel has ever obtained such an excellent result.]

4. That the Supreme Court has directed that petitioning counsel should be paid for their time, except where their time "[bears] <u>no relationship</u> to the grant of relief…"  (Emphasis Added.)  [See below for cite.]

These four fundamental principles were succinctly discussed in <u>Fox v. Vice</u>, 131 S.Ct. 2205, 2214 (June 6, 2011), wherein the Supreme Court concluded:

> Given this reality, we have made clear that plaintiffs may receive fees under §1988 *even if they are not victorious on every claim*.  A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purpose [sic].   *That "result is what matters,"* we explained in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983): A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail *on every contention*."  *Ibid*.  The fee award, of course, should not reimburse the plaintiff for work performed on claims that *bore no relationship to grant of relief*… (Emphasis Added.)

In recognition of this reality, Defendant attempts to avoid the "bore no relationship to grant a relief," <u>Fox</u>/<u>Hensley</u> fee test and focuses, instead, on one new defense (at least by label) in its Opposition.

Defendant requests this Honorable Court to adopt a Lodestar standard built around an "ill-considered strateg[y]" or an "unnecessary litigation strategies" type test.  *See* Opp., ps. 11 and 12.  Sometimes Defendant refers to its new fee standard as an "unreasonable tactics" test.

Opp., p. 14.  Under such a standard, if Class Counsel is not successful on a claim or contention, this Honorable Court would not than apply the Supreme Court's "result is what matters" or "bore no relationship to grant of relief" tests.  Virtually any unsuccessful claim or contention can easily be relabeled an "ill-considered strategy[y]" or an "unnecessary litigation strategy[y]" as illustrated in Defendant's Opposition.  If adopted, the use of these labels could undercut the Supreme Court's understanding of a reasonable statutory fee.

Under Defendant's self-labeled fee tests, it concludes that Class Counsel should be awarded approximately thirty percent (30%) of their $226,431.35 (i.e. $66,415.68).  Curiously, here as before, the Defendant's contends that this Honorable Court should award thirty percent or less of Class Counsel's time charges.  Earlier this Honorable Court rejected the Defendant's view that a reasonable fee would be no more than $203,594.15 and awarded Plaintiffs over two and a half times its suggested maximum fee in the amount of $515,708.70.  Op., p. 1.  *See also* Document 189.  Virtually all of the reduced fees in the initial proceeding were because Plaintiffs lost a multitude of claims and contentions, prevailing on only one.  In this fee-on-fee proceeding all expended time is related to only <u>one</u> reasonable fee-on-fee claim.

In its Opposition Defendant ignored the time categories based on the chronology of events that occurred during the Fee-on-Fee Proceedings.  Under Class Counsel's fee-on-fee presentment, this Honorable Court would have been able to link their specific time charges, chronologically to their specific legal projects as reflected on the docket entries.  It is those projects, not Class Counsel's ability to maintain "auditing perfection" (<u>Fox</u>, at 2214), that provides the basis for their fee request.

Class Counsel, nevertheless, will respond to Defendant's myopic views as to how Class Counsel's Fee-on-Fee Briefs should be analyzed.[2]

---

[2] At the outset it should be noted that Defendant's fn. 1 makes no sense.  Opp., p. 2.  Comparing Class Counsel's September 19, 2011 Declaration (Document 180-2, p. 5) and Class Counsel's October 12, 2011 Declaration (Document 193-4, p. 7) the vast majority of this difference is accounted for in new Category VII.  The other differences can be easily ascertained by a comparison of the two Declarations.

## LEGAL ARGUMENTS

I.   **Class Counsel's Settlement Time is Compensable
     (Opp., p. 23)**

Class Counsel's Initial Fee Brief was filed on October 19, 2010.  Document 145.  The

Class Settlement Hearing was thereafter held on November 17, 2010.  The distribution of the

Settlement proceeds to the thousands of class members occurred, thereafter, in February 2011.

Class Counsel is not clairvoyant and, therefore, on October 19, 2010 (when Class

Counsel's Fee Brief was filed), Class Counsel was not in a position to reasonable estimate their

Class Hearing and Class Settlement Distribution time.  Some distributions are quite complex and

generate a multitude of class member inquiries and others, as here, are virtually problem free.

Class Counsel knew that a Fee Brief would be subsequently filed.  Rather than speculate

in the Initial Fee Brief about the time that would be required for preparing for and attending the

Class Hearing and, thereafter, the distribution issue, they elected to wait.

II.   **Class Counsel's Estimated Future Time is Compensable
      (Opp., ps. 2, 4 and 23)**

Defendant's Opposition is internally inconsistent.  In its Opposition, it argues that Class

Counsel is required to estimate his future time (*see* argument *infer*) and, here, it argues that a

future time estimation is not compensable.  Obviously, both positions cannot be right, and

neither are, since questions as to when future fee estimation is proper and when it is not is fact

specific based on the stage of the class action in relationship to the fee proceedings.

One circumstance where the fee should be estimated is where future events can be

predicted with relative certainty.  Time expended in preparing for and attending a Class Hearing

and Class Distributions (which may or may not be straight forward) generally do not provide an

appropriate time to estimate an attorney's fee.  In contrast, after the Parties obtained the benefit

of this Honorable Court's attorney fees views, in its September 28, 2011 Opinion, estimation of future time in preparing this Reply is reasonable.  In fact, Class Counsel believed that with the benefit of this Honorable Court's reviews of fees, that further briefing would not be necessary. They, therefore, concluded that a Declaration of their time charges without a brief would suffice. Based on this belief, and as a time saving measure, Class Counsel, therefore, only filed a Declaration without a supporting Brief.  Document 108.  The supporting Brief was eventually filed on October 11, 2011, after the Parties were unable to reach an agreement.  Document 192. Class Counsel's "estimated future time," which totaled $5,400.00, was underestimated because they did not expect to have to respond to a twenty-seven page Opposition (exclusive of substantial exhibits).  Therefore, due to Defendant's extensive Objections, Class Counsel had to expend more time than estimated and (simultaneously with this Reply) has adjusted and increased Class Counsel's total time claimed by an additional $31,000.00.  This amount represents 85% of Class Counsel's actual time charges for actual amount.

III.   **Class Counsel's Communications with Pittsburgh Attorney's to Establish the "Community Market Rate," is Compensable (Opp., ps. 3-4 and 13)**

Defendant argues that this Honorable Court should reduce Class Counsel's compensation by $30,294.00 for *inter alia* consulting leading attorneys in the Pittsburgh area to obtain "Community Market Rate" declarations.  Opp., p. 14.  Such community market rate information is required to be placed into the fee record.  *See* Blum v. Stenson, 465 U.S. 886 (1984).  In Blum, the Supreme Court held that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Id* at 895.  In Blum, the Supreme Court recognized that community market rates could be established through Declarations by experienced attorneys who do similar work in the community.  *Id* at 896.  The burden of creating such a record is needed not

only for the benefit of a defendant, but for the court and, in a class action, the class members (who retain the right to object to a fee).

Defendant's defense is trifold.  First, it argues that Class Counsel was under no burden to create a factual record of Community Market Rates, but should have simply assumed (and risked) that this Honorable Court would accept, Class Counsel's hourly rate, without a Community Market Rate record.   Second, it argues that Class Counsel should have been clairvoyant and anticipated (unlike every other fee issue) that Defendant would not contest their requested hourly rates.   Opp., p. 14.   Third, Defendant argues that such a "costly exercise [creating a "Community Market Rate" record]… could have been avoided by a simple communication between counsel."   *Id*.   If this were true, Defendant had more than ample opportunity to make that simple communication.  In fact, the Parties delayed the fee proceedings, for about six months, in order to resolve their fee dispute.  Even after Class Counsel filed a detailed Motion for Attorney's Fees, Defendant offer only increased to "no more than $203,594.15."  Initial Opp., p. 42.  This offer, based on far more than "simple communications" represented only 39% of what this Honorable Court ultimately awarded.  These record facts put the lie to Defendant's inference that Class Counsel could have obtained their "community market rate" by a simple communication.[3]

---

[3] The fact that a Defendant elects not to contest Class Counsel's supporting Fee Declaration constitutes a recognition by the Defendant that Class Counsel had satisfied their burden of proof.  Joy v. Manufacturing Corp., v. Pullman, Co., 742 F.Supp 911, 916 (W.D.Pa. 1990) citing Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d. Cir 1985), vacated on other grounds 478 U.S. 1015 (1986) recognizing a need for such declarations.  It does not establish that Defendant, at an earlier point, would not require Class counsel to satisfy their burden of proof on this issue.

**IV.    Class Counsel's Consultations and Payments with Experts to Obtain Declarations on the Complexity, Importance and non-Monetary Values of this Litigation is Compensable
(Opp. ps. 3-4 and 13)**

Among the many important fee factors that must be considered under <u>Fox</u>/<u>Hensley</u> are the complexity, importance and non-economic values Class Counsel created.  Defendant, itself, recognized that these were relevant issues as evidenced in its Initial Fee Opposition ("Initial Opp.").

Defendant's Initial Opposition speaks for itself.   Therein, it considered each of these issues of paramount importance.  It argued that:

1.   This is a simple, straight forward, one issue case with no importance.  It argued that:

> Plaintiff's own Briefs underscore the simplicity of the factual underpinning to their one, ultimately-successful issue.

Initial Opp., p. 33.

2.   The Court should apply a percentage amount to the extremely "limited success" obtained by Class Counsel, consisting of $59.00 per class member.  Initial Opp., ps. 4, 33-37 and 42.

3.   Class Counsel's time charges were unreasonably excessive.  Initial Opp., ps. 4, 25 and 28.

Class Counsel has two factual burdens – to determine the reasonableness of their hourly rates and to establish the reasonableness and relatedness of their time.   *See* <u>Wilkowski v. International Brotherhood of Boilermakers Iron Shipbuilders Local Union</u>, 2011 WL 1433704 *4 (W.D. Pa 2010).   In Lodestar fee calculations, the reasonableness of the Lodestar amount requested (including time) presents a factual, not legal, issue.  *See* <u>In Re Holocaust Victim Assets Litigation</u>, 270 F.Supp.2d 313, 316 (E.D. N.Y. 2002) (Professor Neuborne "opinion of… the

reasonableness of [Class Counsel's] lodestar calculation is a form of expert testimony.").   Class Counsel retained three experts, to address each of these areas:

- Carolyn Carter (expert for the complexity and importance) Document 165.

- Dr. Stan Smith (expert for the non-monetary benefits created) Documents 157 and 163.

- Stewart Rossman (expert for the reasonableness of Class Counsel's time charges) Document 145, attachment #6.

Obviously, someone has to pay for expert testimony which was required to establish reasonable fees.   Technically, since the fee recovery belongs to the plaintiff [Evans v. Jeff D., 475 U.S. 717 (1986)], it is either the plaintiff or the defendant that is responsible to pay for the expert fees.   It does not seem logical that Congress would require a Truth-in-Lending Act ("TILA") consumer (such as Mr. Vallies, whose maximum statutory recovery cannot exceed $1,000.00) to incur thousands of dollars in expert fees.   Nonetheless, this is Defendant's position.

It would be illogical to deny Named Plaintiff, Mr. Vallies, compensation his Class Counsel's time and costs in consulting and retaining experts whose testimony "bore" a direct relationship to the grant of the fee relief.   *Contrast*, Opp., p. 14 to 16.[4]

**V.    Class Counsel's Time for Responding To Defendant's Onerous Discovery Requests is Compensable (Opp., ps. 19-20)**

Class Counsel's time in responding to Defendant's onerous discovery requests is related to Class Counsel's fee claim.   If the time expended was unrelated, it must be concluded that there was no reason to serve that discovery.   Defendant, at this late stage, cannot flip-flop after concluding that its onerous discovery was relevant to the fee issues.   Opp., ps. 19-20.

---

[4] The $1,125.00 paid to Rothman, Gordon, P.C., was not an expert fee, but a mediation fee.  *See* Opp., p. 16.  This cost was for the Court appointed Mediator, Louis R. Kushner.  Mediator Kushner's partner, James Carroll had provided a Declaration in support of Plaintiffs' Reasonable Fee Request (Document 145, attachment 14) which may account for Defendant's error.  Attorney Carroll was not compensated for his declaration.

Defendant's own Opposition acknowledges that its discovery was relevant.  Its defense goes like this:

- Class Counsel's time was so vague that this Honorable Court would have been unable to award Class Counsel reasonable compensation for their time, without Defendant's help.

- To avoid this harsh result, Defendant felt compelled to assist Class Counsel in clearing up the vagueness in their time record and otherwise assist Class Counsel.

As succinctly argued by Defendant:

> Given the inadequacy of Plaintiff's Counsel's time record as recognized by the Court, and also given the excessiveness of the approximately $700,000 fee request, Sky Bank was put in a position where it was ***compelled*** to serve discovery requests seeking more detailed records documenting the specific claims to which various time entries were devoted and other documentation supporting the enormous fee request.   (Emphasis Added by Defendant.)

Opp., p. 19.

Class Counsel's time records and the docket entries, when properly linked together, speak for themselves.  Irrespective of how onerous Defendant made its discovery, would not have made Class Counsel's time records less vague.  The time records and docket, upon which the majority of the time is based, speaks for themselves.

Defendant's extensive fishing expeditions into the manually maintained and ESI data maintained by three law firms (Malakoff, Doyle and Finberg, P.C.; Malakoff and Brady, P.C.; Michael P. Malakoff, P.C.) over the extended eleven year litigation period was unnecessary.  If Class Counsel failed to go along with this ill-considered defense strategy, they would have had to risk incurring additional time charges in a Fed.R.Civ.P. 37(a)(1) discovery dispute.  In addition, Defendant would have whined that Class Counsel was attempting to conceal relevant fee facts.

Class Counsel, therefore, was between a rock and a hard place and bit the bullet and attempted to answer the discovery Defendant's entire discovery that arguably was relevant.  At great time and expense, Class Counsel retained bit-x-bit, LLC, to pour through their computer hard drives, in order to advise Defendant of what ESI information (extending back eleven years) was available and at what cost.  Class Counsel also had to review their extensive paper files.

Class Counsel's time in answering Defendant's burdensome discovery request (totaling $29,970.00) is fully compensable.  This Honorable Court had the authority, Class Counsel would be seeking an enhancement for being put through such a torturous discovery process designed no to help Class Counsel, but to chill Class Counsel from representing consumers.[5]

## VI. Class Counsel's Time Expended Preparing and Pursuing Discovery Upon Defendants (under the law of this case) is not Compensable (Opp., ps. 20-21)

The Parties agree that Class Counsel's time, under the law of this case, preparing and pursuing Plaintiffs own discovery (totaling $16,940.00), is not compensable.  *See* Class Counsel's Initial Fee Brief at ps. 14-17.  *See also* Opp., at ps. 20-21.

## VII. Class Counsel's Mediation Time and Costs is Compensable (Opp., ps. 16-19)

A prevailing plaintiff, like Mr. Vallies, is entitled to recover full compensation for his counsel's fee-on-fee time expenditures and costs.  *See* <u>Hernandez v. Kalinowski</u>, 146 F.3d 196 (3d. Cir 1998).  There is no known exception for time expended for a Court Ordered Mediation.

Defendant argues that as a matter of public policy, a plaintiff, like Mr. Vallies (who recovers the maximum statutory damages allowed under the TILA), should also be required to

---

[5] Curiously, it appears that Defendant does not object to Mr. Vallies for his request to be reimbursed the $1,824.47 that his Class Counsel paid to bit-x-bit, LLC.  *See* Document 145, Exhibit B.  It is inconsistent for Defendant to object to Class Counsel's ESI related time discovery and not simultaneously object to this cost.

pay thousands of dollars in Mediation costs in order to ensure that his Class Counsel recovers a reasonable attorney fee.

Fortunately, it is Congress, not the Defendant that determines "public policy." *See* Opp., p. 16.  In fact, the adoption of Defendant's "public policy" mediation payment defense would negate the Congressional "public policy" of encouraging plaintiffs, like Mr. Vallies, and their counsel to enforce fee shifting statutes deemed of upmost public importance. *See* TILA 15 U.S.C. §1640(a)(3).

When Congress enacts a statute with a fee shifting provision it thereby signifies that the enforcement of the statute is in the public interest.  Thus, under federal law when a statute has a fee shifting provision, it is recognized that private enforcement of the statute represents, "A policy that Congress considered of the highest priority," (Emphasis Added).  Christianburg Garmet Co. v. EEOC, 434 U.S. 412, 418 (1978), quoting Newman v. Piggie Park Enter. Inc., 390 U.S. 400, 402 (1963).

A party, like Mr. Vallies, should not be forced to incur thousands of dollars in mediation fees in order to recovery a fully compensable Lodestar fee for his Class Counsel.  This is because *inter alia* such onerous costs negate the policies, underlying statutory fee shifting.   It is effectively a form of "reverse" fee shifting.

In apparent recognition of the weakness of its "public policy" defense, Defendant falls back to an equally lame defense and asserts that Class Counsel acted in "bad faith" during the Mediation process. *See* Opp., ps. 16-19.  The record, however, tells quite a different story:

1.  Class Counsel in preparing for the Mediation, expended reasonable time in developing new fee theories in a serious attempt to resolve this matter, which included the development of fee charts. *See* Opp., p. 18 referring to Class Counsel's 16.25 hours.

2. Defendant's reference to "alleged" charts and spreadsheets is extremely misleading. Both Defendant and the Mediator were both provided copies of those charts. *Id*, p. 18.

3. Even after the formal Mediation session ended on June 14, 2011, Class Counsel (with the help of the Mediator) actively continued to pursue an out of Court settlement. *Id*, p. 17 referring to the "after the June 14, 2011, mediation…" (quoting Class Counsel's Fee-on-Fee Brief, p. 12). Class Counsel's fee-on-fee time records further support these undisputable facts.

Thus, Defendant's "bad faith" defense overlooks all of Class Counsel's "good faith" underline conduct before, during and after the Mediation.

Overlooking Class Counsel's "good faith" conduct, Defendant alleges that Class Counsel evidenced a "bad faith" belief. Class Counsel's belief, based on knowing Defendant and its Defense Counsel quite well after eleven years of litigation, reasonably concluded that a more transparent ADR process (a Fed. R. Civ. P. 53, Special Master) would be more likely to result in an out of Court resolution. This is because the Special Master under Fed. R. Civ. P. 53(e) would have to file a report with this Honorable Court. The process would be transparent and, therefore, likely result in better faith from both Parties. In contrast the mediation process in Pennsylvania is strictly confidential. *See* 42 Pa.C.S.A. §5949.[6] Class Counsel was willing to pay for a Rule 53 Special Master, but notified Defendant that they were not willing to pay for mediation. In fact, by letter, they offered to consent that Mediator Kushner could serve as the Special Master. These facts further support that Class Counsel was quite serious about resolving their fee disputes through an ADR process.

---

[6] Defendant highlights the fact that Class Counsel redacted a significant portion of their May 9, 2011 correspondence. Opp., p. 17. The reason for this redaction was because Class Counsel, as required by law, respects the confidentiality provisions of the Pennsylvania Mediation Act (42 Pa.C.S.A. § 5949). Obviously Defendant does not share a similar respect for this Pennsylvania Mediation Act.

The bottom line is that the existing fee-on-fee case law should be applied and Defendant's "public policy" is negated by a reasonable reading of the TILA.   In addition, Defendant's "bad faith" (even if relevant) defense is negated by this record.   Respectfully, this Honorable Court should not hold the named plaintiff in a TILA action responsible for substantial payments to enforce their entitlement to recover a fully compensatory fee for class counsel.

**VIII.   Class Counsel's Reasonable Time Expended on Preparing and Pursuing their Fee-on-Fee Brief, Should not be Discounted
(Opp., ps. 21-23)**

Defendant objects to Class Counsel's request for a reasonable fee award ($25,818.75) for their time expended in preparing their Fee-on-Fee Brief.   Once again, this is a dispute that could have been and should have been easily avoided.   Defendant, instead, elected to pursue its Stalingrad strategy.   *See* Class Counsel's Fee-on-Fee Brief, ps. 18-19 and 22.

With the benefit of this Honorable Court's September 28, 2011 Fee Opinion, Class Counsel reasonable concluded that future fee disputes could and should be easily avoided and made a conservative suggestion to agree on a flat fee for Class Counsel's preparation of a Fee-on-Fee Brief and/or this Reply Brief.   The acceptance of this offer would have saved the Parties from litigating over the reasonable fee to be award on either or both Briefs.   Class Counsel was willing to make a substantial discount on their time.   This would have been a win-win for all Parties.[7]   Defense failed to even explore this option and its Stalingrad defense prevailed.   *See* the Fourth Circuit Opinion in <u>Nigh v. Koon Buick Pontiac GMC, Inc.</u>  478 F.3d 183, 189 (4th Cir. 2007), wherein that court stated:

> …the risk of losing more in costs and fees than is gained in refunded damages in one particular appeal may well be a risk

---

[7] Under the Federal Rules, a defendant can make an offer to a plaintiff, and thereby economically place the plaintiff at great economic risk if they fail to accept a reasonable offer.  *See* Fed. R. Civ. P. 68.  Here, Class Counsel made a reverse Rule 68 offer.  However, to a Defendant pursuing a Stalingrad strategy, the economics of the suit are secondary.  This is why the litigation fees and costs have been much higher than necessary.

worth taking: <u>what is lost in fees in that case may be saved in damages in a later one</u>.  (Emphasis added.)

Thus, the defendant in <u>Nigh</u>, was willing to incur over eighty-five thousand dollars in attorney's fees, in part, to defend a one thousand dollar (maximum) TILA claim.

## IX. Where the Results are Excellent, Class Counsel Should not be Penalized for a Blanket Fee Reduction of 30%
### Opp., ps. 11-12 and 23-26

Defendant in its first eight defenses argues that this Honorable Court should reduce Class Counsel's $226,431.35 to $94,879.54.  Opp., ps. 4, 23 and 26.  Defendant then argues that this Honorable Court should further reduce the $94,879.54 by thirty percent (30%), thereby reducing Class Counsel's fee-on-fee award to $66,415.68.  *Id*.  The Defendant overlooks that "specificity should only be required to the extent necessary for the court 'to determine if the hours claimed are unreasonable for the work performed.'"  <u>Brown v. City of Pittsburgh</u>, 2010 WL 2207935 *8 (W.D.Pa. 2010) citing <u>Rode v. Dellarciprete</u>, 892 F.2d 1177 (3d. Cir 1990).  Therefore, "a general description… and the total fee for the activities have been deemed adequate."  <u>Brown</u> at *8.  All that is required is that the "attorney billing entries establishes that they are sufficiently specific to determine whether the hours are reasonable.  *Id* at *9.  In <u>Brown</u>, the court did "not agree that an additional overall reduction of 10% is warranted."  *Id* at *12.  *Also see* <u>In Re Diet Drugs</u>, 582 F.3d 524, 539 (3d. Cir 2009) (Recognizing, at least in a complex case, that a court may rely on time summaries and need not review actual billing records.). Defendant's request for a forty percent reduction would constitute a severe penalty, especially for Class Counsel's excellent result.[8]

---

[8] In actuality such a reduction amounts to a total reduction of 40% not 30% since Class Counsel has already taken a 15% reduction towards their fees claimed. For example:

| Total Fees incurred by Class Counsel | $1000.00 |
|---|---|
| Reduction of Fees by Class Counsel | 15% |
| Total Amount Claimed by Class Counsel | $ 850.00 |

To reach this conclusion, Defendant requested this Honorable Court to ignore the Fox/Hensley standard of fee shifting and, instead, require Class Counsel to further parse his time and provide more detailed time entries (i.e. which particular case they researched, the particular parts of the case read, etc.). Opp., p. 24-26. Such a holding would negate the case law of this District Court, wherein block billing is deemed acceptable. *Also see* Fox at 2214, wherein the Supreme Court held that "auditing perfection" was not required to determine a reasonable statutory fee award.

In complex litigation "missteps" happen. Opp., p. 22. Obviously, minor "missteps" must be promptly corrected when discovered. This is an inherent part of the litigation process. If reasonable compensation cannot be denied when Class Counsel failed to prevail on a contention, Class Counsel obviously cannot be denied compensation after they promptly correct an erroneous declaration shortly after it is filed. *See* Fox at 2214.

Other points in Defendants Opposition that should be highlighted include the following[9]:

- Recognition that Erin Brady-Swenson not only had to expend substantial time in the fee-on-fee process, to exercise her "billing judgment" and respond to Defendant's onerous discovery requests, but that she was also actively involved in other phases of the case. Opp., ps. 24-25. Significantly, no compensation was claimed for her fee-on-fee time.[10]

- Recognition that Class Counsel reviewed the fee submissions in the "Gum (sic) and Second Amendment Fee Papers." Opp., p. 24. *See* the fee proceedings that

| | |
|---|---|
| Defendant Requested Reduction | 30% |
| After Defendant's Fee Reduction | $ 595.00 |
| **Total Reduction from Actual Fees** | **40%** |

[9] All facts referred to in the bullet points *infer* may be found in Class Counsel's Declaration filed simultaneously with this Brief.

[10] Only Class Counsel, Michael P. Malakoff, was included in the Fee-on-Fee Request. Substantial time incurred by all others was eliminated. Nonetheless, Defendant in its Opposition suggests that there was "a duplication of efforts." *See* Opp., p. 12, fn. 11, quoting Initial Opp., p. 9.

proceeded the Second Amendment Gun case of <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).

- Recognition that co-Class Counsel reviewed an ACLU Fee Petition.   *See* <u>Codepink Pittsburgh Woman for Peace, et al v. United States Secret Service, et al</u>, 09-cv-1235 (W.D. Pa., Lancaster, J.).

- Recognition of the Fee Letter dated February 24, 2010.

- Recognition that "Jonathan and Kathy" related time was expended.  Jonathan is Jonathan Burns, Associate, who worked on the Initial Fee-on-Fee Brief.  Kathy is Kathy Merriman, Accounting Assistant, who prepared the charts provided for the June 14, 2011 Mediation and spreadsheets provided shortly thereafter.  Opp., p. 22.  Significantly, no compensation was claimed for Jonathan or Kathy's time either.

- Recognition that during the time frame of July 8, 2010, to August 24, 2010, Class Counsel was communicating with Pittsburgh area attorneys to obtain community market rate Declarations and expert reports.  Eight attorney Declarations are at Documents 145-13.  *Also see* the Declarations of Stewart Rossman (Document 145, attachment 6), Dr. Stan Smith (Documents 157 and 163) and Carolyn Carter (Document 165).

There is no justification for a forty or thirty percent fee reduction.  Defendant should not be rewarded and Class Counsel should not be penalized by Defendant's Stalingrad defense strategy.

**X.   Defendant's Stalingrad Defense Strategies**

It is not that uncommon for a wealthy entity to take advantage of their superior "army" of lawyers and other resources by the use of a Stalingrad defense strategy.  *See* Document 194. Such litigation must be tolerated, but parties that adopt such a strategy where they are not successful, must be held accountable.

Here, major lenders, Sky Bank and then Huntington National Bank, used their "army" of lawyers to defend against a relatively small class (consisting of Mr. Vallies and other used car buyers) under the TILA.   Defendant should now be held accountable.

The Stalingrad defense strategy can be used either offensively or defensively.  Here, this strategy was used defensively.  In the patent infringement decision of <u>Checkpoint Systems, Inc. v. All – Tag Security et al</u>, 2011 WL 5237573 (E.D. Pa. 2011), the Stalingrad defense strategy was used offensively.  In <u>Checkpoint</u> an $834,000,000.00 plaintiff attempted to aggressively beat upon a $15,000,000.00 defendant and lost.  The District Court awarded defendant, All – Tag Security, $4,151,147.21 for their attorney's fees and costs litigation defense.  In making this award, the District Court addressed and rejected some of the very same defenses raised here.  It was there held:

> Plaintiff cites no case law to support its contention that Defendant should not be awarded fees for matters which Defendants lost…
> In the instant case, Defendant should be awarded reasonable attorneys' fees for the matter which Plaintiff claims were "lost" by Defendant.  Defendants were the prevailing parties who obtained an "excellent result"; they successfully defended the case.  They did not file any of their motions in bad faith, nor were they frivolous.  (Footnote omitted.)

*Id* at *3-4.  The Court in <u>Checkpoint</u> went on to recognize:

> Where a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee, including all hours reasonable expended on the tion. (sic)

Citing <u>Hensley,</u> 461 U.S. at 435.  In short:

> The borrower's counsel did not inflate this small case into a larger one; its protraction resulted from the stalwart defense.   And although defendants are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

<u>McGowan v. King, Inc.</u>, 661 F.2d 48, 51 (5th Cir. 1981).  That court goes on to

state that when a defendant:

> Could have avoided liability for the bulk of the attorney's fees...
> by making a reasonable settlement offer in a timely manner…

*Id.*

> [it] cannot litigate tenaciously and then be heard to complain about the time necessarily spend by the plaintiff in response.

<u>Riverside v. Rivera</u>, 477 U.S. 561, 581 n.11 (1986).  (internal citations and quotations omitted.)

The same should be held here.

## CONCLUSION

Respectfully, for the reasons stated above, Plaintiffs' Fee-on-Fee Brief should be granted.

Class Counsel therefore requests a reasonable statutory fee-on-fee award of $231,271.50 and a

cost award of $19,759.85 for a total recovery of $251,031.35. Class Counsel also respectfully

requests an award of interest under 28 U.S.C. §1961(b) commencing from the date of this

Honorable Court's September 28, 2011. *See* O'Neil v. Sears, Roebuck & Co., 108 F. Supp. 2d

443, 444-446, 448 (E.D. Pa. 2000) *and* EEOC v. Fed. Express Corp., 537 F. Supp 2d 700, 718-

719 (M.D. Pa. 2005).


Respectfully submitted,

MICHAEL P. MALAKOFF, P.C.


By: */s/ Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pa. Id. #11048
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: 412.281.4217
Facsimile: 412.281.3262
malakoff@mpmalakoff.com


*Attorneys to Louis R. Vallies and all other*
*motor vehicle buyers similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

It hereby certify that on this **14th** day of **November 2011**, a true and correct copy of the

foregoing **Plaintiffs' Reply Brief in Support of Statutory Fees-on-Fees** was served upon all

interested parties via the Court's electronic filing system:


Marty Bryce, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599




*/s/ Michael P. Malakoff*
Michael P. Malakoff